396 So.2d 713 (1981)
Sonia JACOBS, a/K/a Sonia Linder, Appellant,
v.
STATE of Florida, Appellee.
No. 50175.
Supreme Court of Florida.
March 26, 1981.
*715 Ray Sandstrom of Sandstrom & Haddad, Fort Lauderdale, for appellant.
Jim Smith, Atty. Gen., and Benedict P. Kuehne and Paul H. Zacks, Asst. Attys. Gen., West Palm Beach, for appellee.
PER CURIAM.
Jacobs was convicted of the first-degree murders of Phillip Black and Donald Irwin and the kidnapping of Leonard Levinson.[1] The jury recommended life sentences, but the trial judge sentenced her to death for the murders and imposed a life sentence for the kidnapping. This Court has jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the convictions and the kidnapping sentence, but we reverse the death sentences.
Phillip Black, a Florida Highway Patrolman, was on routine patrol in the early morning hours of February 20, 1976. Riding with him was his friend, Donald Irwin, a Canadian constable on vacation. As Black drove his patrol car into a rest area along Interstate 95 he noticed a Camaro automobile in which Rhodes, Tafero, Jacobs, and her two children were sleeping.[2] Rhodes occupied the driver's seat, Tafero the right front seat, and Jacobs and the children the rear seat.
Trooper Black stopped his car alongside the Camaro and walked to the driver's side to ask for identification. Upon approaching the car, he saw a gun at Rhodes' feet. Taking the gun he returned to his patrol car to run a radio check on Rhodes and the weapon. Rhodes exited the car while Tafero handed a second gun to Jacobs in the back seat. From the radio check Black learned that Rhodes was a convicted felon, and he returned to the Camaro to ask the identity of the car's other occupants. Noticing a gun holster on the floor of the back seat, he ordered everyone out of the car.
Tafero was slow getting out of the car, so Black pulled him out. The two struggled, until Black, with Irwin's help, subdued Tafero. While Irwin held Tafero against the patrol car, Black backed away and drew his gun. Rhodes walked to the front of the car and stood facing away from the vehicle with his hands in the air. Shortly thereafter Rhodes heard two or three shots; he turned and saw Jacobs, still in the car, with a gun in her hands. Tafero escaped from Irwin's grasp, ran to the car, grabbed the gun, and shot Black and Irwin.
Tafero took the trooper's gun and some shell casings; he and the rest of the group then fled in the patrol car. With Rhodes driving, they exited Interstate 95 and entered an apartment complex parking lot where they saw Leonard Levinson emerging from his Cadillac. Rhodes, gun in hand, demanded that Levinson surrender his keys. Tafero told Levinson that they had a sick *716 child to take to a hospital. Jacobs echoed that statement by nodding agreement. Tafero grabbed Levinson, and all the parties entered the Cadillac. With Rhodes again driving the group sped off. They were finally captured when Rhodes lost control of the car while trying to evade a police roadblock.
Most of the foregoing facts were revealed by Rhodes' testimony. Other evidence included inculpatory statements Jacobs made both upon and after her arrest. Although Tafero testified that Rhodes did all the shooting, there is sufficient evidence to support the conclusion that Jacobs fired the first shot or shots. From this evidence a jury could have found that Jacobs either shot Black or was an accessory to the shooting of Irwin and Black. There is sufficient evidence to support her convictions for first-degree murder.
There is likewise sufficient evidence to sustain her kidnapping conviction. One who participates with another in a common criminal scheme is guilty of all crimes committed in furtherance of that scheme regardless of whether he or she physically participates in that crime. Pope v. State, 84 Fla. 428, 94 So. 865 (1922); Davis v. State, 275 So.2d 575 (Fla. 1st DCA), cert. denied, 280 So.2d 684 (Fla. 1973). The victim, Levinson, testified that he never heard Jacobs say or do anything which led him to think that she was responsible for his predicament. Jacobs, however, actively participated in the murders. She willingly fled with the others in the trooper's car. She nodded agreement when Tafero told Levinson they needed the Cadillac to take a sick baby to the hospital. The evidence presented was sufficient evidence for a jury to conclude that Jacobs participated in a common scheme, the furtherance of which included the kidnapping.
Jacobs urges that discovery violations entitle her to a new trial. The basis for this contention was not discovered until her initial appeal was pending in this Court. See Jacobs v. State, 357 So.2d 169 (Fla. 1978). This Court directed the trial court to conduct an inquiry, which revealed these facts. Before the trial of either Jacobs or Tafero, Rhodes and the state began plea negotiations. As a prerequisite to any plea arrangement the state required that Rhodes submit to a polygraph examination to determine the truth of his story that he did none of the shooting. Rhodes agreed, and, following the examination, the prosecutor agreed to reduce the charges against him in return for his trial testimony. The state never told Jacobs' attorney that Rhodes had taken a polygraph examination. Jacobs contends that Rhodes' answers to the polygraph operator's questions should have been disclosed by the prosecutor because those answers were inconsistent with Rhodes' trial testimony. She claims this failure is a critical discovery violation and a violation of Brady v. Maryland.[3]
Polygraph results themselves are not discoverable. Anderson v. State, 241 So.2d 390 (Fla. 1970), vacated, 408 U.S. 938, 92 S.Ct. 2868, 34 L.Ed.2d 758 (1972). As for Rhodes' answers, the trial judge ruled that they were not discoverable as "statements" as contemplated by Florida Rule of Criminal Procedure 3.220(a)(1)(ii). The polygraph examiner's report containing Rhodes' answers was written the day following the examination from notes taken during the interview. There was no effort to effect a "substantially verbatim" recording of Rhodes' answers. The trial judge reviewed the statements reportedly made to the examiner and compared them with Rhodes' trial testimony. He found that they were not inconsistent with the trial testimony when that testimony was viewed in its entirety. A review of the record confirms this. No favorable or inconsistent statements or facts were withheld, and due process does not require a new trial. See United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).
*717 Jacobs next complains about the admission into evidence of several statements she made. Shortly after the crash at the roadblock, a trooper, thinking she was a hostage, led Jacobs away from the scene where the handcuffed Tafero and Rhodes lay on the ground. As she passed Tafero, Jacobs bent down and appeared to kiss him. After acknowledging that she was "with them," Jacobs responded to a trooper's question, "Do you like shooting troopers?" by saying, "We had to." Jacobs' response was spontaneous and voluntary and was not part of a custodial interrogation. Allowing this statement into evidence was not inconsistent with Miranda principles because volunteered statements are not barred by the fifth amendment. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
At her arrest Jacobs was given Miranda warnings. Afterward she talked to several persons about the matter; portions of those comments were used at trial. The record supports the trial judge's finding that Jacobs made those comments freely and voluntarily after full Miranda warnings and without any coercion. They were therefore admissible. Jackson v. State, 366 So.2d 752 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979).
Jacobs requested forty peremptory challenges in the jury selection process based on the fact that she was charged with four felonies punishable by death or life imprisonment. The trial judge, following Florida Rule of Criminal Procedure 3.350, denied the request, ruling that the defendant had only ten challenges as a matter of right. Consistent with Johnson v. State, 222 So.2d 191 (Fla. 1969), the judge exercised his discretion by allowing two additional challenges. No error or abuse of discretion is reflected here. Additionally, we find no error in the joinder of the four charges in one indictment, particularly because all four counts arose from one continuous sequence of events. See Fla.R.Crim.P. 3.150.
Jacobs urges that the trial court erred by denying her request to recall a state witness after the prosecution rested in order to lay a foundation for impeachment. The trial judge ruled that counsel could call the witness as a defense witness but could not recall her as a state witness. The reexamination of any witness is within the discretion of the trial judge. McCoggle v. State, 41 Fla. 525, 26 So. 734 (1899). See Royal v. State, 127 Fla. 320, 170 So. 450 (1936); Bryant v. State, 117 Fla. 672, 158 So. 167 (1934). The record fails to reveal an abuse of discretion on this point.
Jacobs further claims the trial judge erred by giving an isolated instruction to the jury. This took place after the jury had started deliberating and had returned to the courtroom to ask a question. The court noted that he had overlooked the instruction on principals and gave it to the jury at that time. Under the circumstances we find no error in the court's instruction.
Jacobs also claims that she was not allowed to participate sufficiently in her defense. We find no substantive basis for that contention.
Although this Court is not favored with any help from either counsel on the issue of the imposition of the death penalty, we must review the propriety of the death sentence. No additional evidence was submitted at the sentencing phase. The jury recommended a life sentence for Jacobs, but the trial judge sentenced her to death. We must review that action in light of Tedder v. State, 322 So.2d 908 (Fla. 1975), where this Court held that the facts allowing imposition of a death sentence over a jury's recommendation of life imprisonment "should be so clear and convincing that virtually no reasonable person could differ." Id. at 910.
The trial judge found three aggravating factors: the defendant knowingly created a great risk of death to many persons; the capital felonies were committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody; and the capital felonies were committed *718 to disrupt or hinder the lawful exercise of a governmental function or the enforcement of laws. Although the shooting occurred in a rest area close to a major highway, it was done with pistols at close range where few, not many, suffered a risk of injury. These facts fall short of the aggravating factor of risk to many persons. See Kampff v. State, 371 So.2d 1007 (Fla. 1979).
The trial judge held the mistaken belief that he could not consider nonstatutory mitigating circumstances. In Songer v. State, 365 So.2d 696 (Fla. 1978), cert. denied, 441 U.S. 956, 99 S.Ct. 2185, 60 L.Ed.2d 1060 (1979), we ruled to the contrary. The jurors in this case may have considered the fact that Ms. Jacobs was the mother of two children for whom she cared. They could have found that her role was mostly passive and that she was under the influence of her lover, Tafero. They may have felt that her actions were what she perceived to be a necessary measure to protect her family. Additionally, Jacobs had no past history of violence. All in all, the evidence is not sufficient to override the jury's recommendation of a life sentence.
The convictions are affirmed, but the sentences of death are reversed, and the cause is remanded to the trial court for resentencing on those two convictions. The life sentence for kidnapping is affirmed.
It is so ordered.
SUNDBERG, C.J., and OVERTON, ENGLAND, ALDERMAN and McDONALD, JJ., concur.
ADKINS and BOYD, JJ., concur with convictions and dissent as to sentences.
NOTES
[1] Jacobs' co-indictees were Jessie Tafero and Walter Rhodes. Rhodes agreed to plead guilty to lesser charges and to testify against Tafero and Jacobs. Tafero, tried separately and before Jacobs, was found guilty of all counts and sentenced to death.
[2] Tafero fathered the younger of Jacobs' children.
[3] 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which holds that, upon the request of an accused, the prosecutor must disclose any evidence favorable to the accused.