Jessie Joseph TAFERO,
Petitioner-Appellant,

v.

Louie L. WAINWRIGHT,
Respondent-Appellee.

No. 84–5908.

United States Court of Appeals,
Eleventh Circuit.

July 28, 1986.
As Amended Sept. 6, 1986.

Marc Cooper, Greene & Cooper, P.A., Miami, Fla., for petitioner-appellant.

Joy B. Shearer, Asst. Atty. Gen., West Palm Beach, Fla., for respondent-appellee.

Before GODBOLD, Chief Judge, KRAVITCH and HATCHETT, Circuit Judges.

PER CURIAM:

The appeal in this capital case requires application of the Supreme Court's recent decision in *Cabana v. Bullock,* —— U.S. ——, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986)

and resolution of a host of other issues. We affirm.

## FACTS

In the morning of February 20, 1976, Florida Highway Patrol Officer Phillip Black and a visiting Canadian law enforcement officer, Donald Irwin, approached a car parked at a rest stop on Interstate 95 in Broward County, Florida. Officer Black saw Walter Rhodes asleep in the driver's seat, Tafero asleep in the right front seat, and Sonia Jacobs and two children asleep in the backseat. Black also saw a pistol at Rhodes's feet. Black then ordered Rhodes and Tafero out of the car. Soon thereafter a struggle began between Black and Tafero.

A truck driver at the rest area testified that Rhodes stood with his hands in the air while Irwin grabbed Tafero and held him against the patrol car. The witness heard a single shot followed by Irwin's cry that he had been shot. After hearing several shots, he saw Black and Irwin fall to the ground. The witness concluded that the shots came from the back seat of the car.

A second eyewitness, another truck driver, testified that after Tafero and Black had begun struggling, Black pulled a pistol on Tafero and Rhodes. He noticed Sonia Jacobs in the back seat, then heard several shots and saw both Black and Irwin fall.

The third eyewitness was co-indictee Rhodes. Rhodes testified that when Black took the pistol from the car, Tafero passed another pistol to Jacobs in the back seat. Rhodes testified that his back was turned when the scuffle between Black and Tafero began. He heard two shots which sounded as if they were fired from different guns. He turned and saw Jacobs holding a pistol which Tafero then grabbed and shot Black and Irwin, who then fell to the ground.

All three eyewitnesses testified that Rhodes, Tafero, Jacobs, and Jacobs's children fled in Black's patrol car. The group later commandeered another car and took its owner hostage. They were finally apprehended at a police roadblock.

The jury convicted Tafero of two counts of first degree murder and one count each of robbery and kidnapping, and the court sentenced him to two death sentences and two prison terms. The Supreme Court of Florida affirmed the convictions on direct appeal. *Tafero v. State*, 403 So.2d 355 (Fla.1981), *cert. denied*, 455 U.S. 983, 102 S.Ct. 1492, 71 L.Ed.2d 694, *reh'g denied*, 456 U.S. 939, 102 S.Ct. 2000, 72 L.Ed.2d 461 (1982).

## PROCEDURAL HISTORY

Tafero filed an original petition in the Supreme Court of Florida for permission to file a writ of error coram nobis alleging newly discovered evidence. This petition was denied. *Tafero v. Florida*, 440 So.2d 350 (Fla.1983), *cert. denied*, 465 U.S. 1084, 104 S.Ct. 1456, 79 L.Ed.2d 773 (1984).

On November 2, 1984, the Governor of Florida signed a death warrant with the execution scheduled for November 29, 1984. Tafero's motion for post-conviction relief in the state trial court was denied after an evidentiary hearing. The Supreme Court of Florida, after oral argument, affirmed the trial court's order. *Tafero v. State*, 459 So.2d 1034 (Fla.1984). On November 28, 1984, the federal district court, after a hearing, denied Tafero's federal habeas corpus petition. The district court found probable cause for Tafero to appeal and granted a twenty-four hour stay of execution. This court granted an indefinite stay.

On appeal from the district court's denial of his writ of habeas corpus, Tafero raises the following constitutional claims:

I. Because the jury instructions allowed the jury to impose the death penalty for felony murder without a finding by the jury that Tafero killed, attempted to kill, or intended to kill, the imposition of the death penalty is cruel and unusual punishment in violation of the eighth amendment and in contravention of *Enmund v. Florida*.

II. The evidence was insufficient to support a felony murder conviction; therefore, the general verdict entered, which could have been based on either premeditation or felony murder, should be set aside.

III. Tafero was denied effective assistance of counsel at every stage of the proceedings, and in particular during the penalty stage of his capital trial, in violation of his rights under the sixth, eighth, and fourteenth amendments to the United States Constitution.

IV. The inherently prejudicial atmosphere surrounding the proceedings, both before and during trial, and the trial judge's failure to recuse himself denied Tafero a fair trial.

V. Because the trial court failed to determine whether Tafero knowingly and intelligently waived his right to present mitigating evidence or affirmatively participate in the sentencing phase, the death penalty was unconstitutionally imposed.

VI. Because it was based on a jury instruction which did not inform the jury that aggravating factors had to be proved beyond a reasonable doubt, the sentence of death was unconstitutionally imposed.

VII. Because the sentence of death was imposed by a judge who believed he could not consider non-statutory mitigating circumstances, it was unconstitutionally imposed.

VIII. Because the standard jury instructions limit jury consideration of mitigating factors, the death penalty in Florida is unconstitutional.

IX. Because the trial judge refused to allow Tafero to take a polygraph examination, to contact witnesses, to grant a continuance, and to properly exclude jurors, Tafero was denied due process of law.

X. The trial judge denied Tafero the right to self-representation.

XI. Because no rational basis exists for sentencing Tafero to death when Jacobs and Rhodes received only life sentences, Tafero's sentence of death is unconstitutional.

## DISCUSSION

### I. The *Enmund* Standard

Tafero contends that the imposition of the death penalty was improper because the jury was not instructed that in order to recommend death, it must find that he either killed, attempted to kill, or intended that a killing take place, and thus violated the Supreme Court's directive in *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). In *Enmund,* the defendant was convicted of murder under a Florida law providing that a person could be found guilty of first degree murder if present at the scene and actively aiding and abetting in the commission of a felony during the course of which a person was killed. Enmund's role was that of a getaway driver who waited outside the residence where a robbery and murder of two victims took place. The Supreme Court reversed the death sentence, holding that the eighth amendment does not allow imposition of the death penalty on one who aids and abets a felony in the course of which a murder is committed by others, "but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." 458 U.S. at 796–97, 102 S.Ct. at 3376–77, 73 L.Ed.2d at 1151. The Court emphasized that in determining the validity of capital punishment under these circumstances, the focus should have been upon Enmund's own culpability, not on the culpability of those who committed the robbery and the murders.

This court held that the *Enmund* determination of whether the accused killed, attempted to kill, or intended that a killing take place need not be made by the jury, but could be made after a review of the record by the federal habeas corpus court. *Ross v. Kemp,* 756 F.2d 1483, 1488 (11th Cir.1985) (en banc). This decision conflicted with the Fifth Circuit's determination that the accused is entitled to a new sentencing hearing when it is unclear from the jury's verdict whether the jury found that the accused killed, attempted to kill, or intended that a killing occur. *See, e.g., Bullock v. Lucas,* 743 F.2d 244 (5th Cir. 1984), *modified sub nom. Cabana v. Bullock,* — U.S. ——, 106 S.Ct. 689, 88 L.Ed.2d 704; *Reddix v. Thigpen,* 728 F.2d

705 (5th Cir.), *clarified on reh'g*, 732 F.2d 494 (5th Cir.1984). The Supreme Court granted certiorari in *Bullock* prior to Tafero's scheduled execution, and thus this court granted Tafero an indefinite stay of execution to await the Supreme Court's resolution of this issue.

In *Cabana v. Bullock*, —— U.S. ——, 106 S.Ct. 689, 88 L.Ed.2d 704, the Court interpreted *Enmund* as holding "only that the principles of proportionality embodied in the Eighth Amendment bar imposition of the death penalty upon a class of persons who may nonetheless be guilty of the crime of capital murder as defined by state law: that is, the class of murderers who did not themselves kill, attempt to kill, or intend to kill." —— U.S. at ——, 106 S.Ct. at 696 (footnote omitted). The Court found that the decision of whether a particular punishment is appropriate in any given case is not one that has ever been required to be made by a jury. —— U.S. at ——, 106 S.Ct. at 696–698. Instead, the Court held that the *Enmund* criteria must be satisfied within the state's judicial process. "[I]t is [the state], therefore, not the federal habeas corpus court, which should first provide Bullock with that which he has not yet had and to which he is constitutionally entitled—a reliable determination as to whether he is subject to the death penalty as one who has killed, attempted to kill, or intended that a killing take place or that lethal force be used." —— U.S. at ——, 106 S.Ct. at 700 (footnote omitted).

In *Cabana*, the Court defined the role of a federal habeas corpus court reviewing a claim that imposition of the death penalty is not supported by an *Enmund* finding. The Court instructed that on federal habeas corpus review, the reviewing court's inquiry is not to be limited to an examination of the jury instructions.

> Rather, the court must examine the entire course of the state-court proceedings against the defendant in order to determine whether, at some point in the process, the requisite factual finding as to the defendant's culpability has been made. If it has, the finding must be presumed correct by virtue of 28 U.S.C. § 2254(d), *see Sumner v. Mata*, 449 U.S. 539 [101 S.Ct. 764, 66 L.Ed.2d 722] (1981), and unless the habeas petitioner can bear the heavy burden of overcoming the presumption, the court is obliged to hold that the Eighth Amendment as interpreted in *Enmund* is not offended by the death sentence. [Footnotes omitted].

—— U.S. at ——, 106 S.Ct. at 697–98.

■ Thus, the role of federal courts on habeas corpus review is to determine whether the *Enmund* determination has been made at any point in the state court appellate proceedings. The district court denied Tafero's *Enmund* claim, finding *Enmund* inapposite because

> there is sufficient evidence in the record to support a finding both that the Petitioner contemplated the use of lethal force during the robbery and therefore intended the killing, and that the Petitioner actually participated in the killing by firing a number of shots at the victims. The Court also takes note of the finding of the Florida Supreme Court which stated on direct appeal that '[t]he evidence shows beyond a reasonable doubt that Tafero is guilty of the premeditated murder of both Irwin and Black.' *Tafero v. State*, 403 So.2d 355, 359 (Fla.1981).

■ Although in light of *Cabana*, it was improper for the district court to make its own determination that the *Enmund* criteria had been satisfied, the language of the Supreme Court of Florida cited by the district court, as well as the Supreme Court of Florida's further declaration that "[p]roceeding on a felony-murder theory might have been superfluous because the facts clearly demonstrated premeditation," establishes that the Supreme Court of Florida made the requisite *Cabana* finding. 403 So.2d at 361. Because the *Cabana* finding is supported by the evidence, Tafero's *Enmund* claim must fail. *See* 28 U.S.C. § 2254(d).

## II. Felony Murder

■ Tafero contends that because the evidence presented at trial is insufficient to

support a felony murder charge, and since the jury was instructed on both felony murder and premeditation, his convictions must be reversed because the jury returned only a general verdict. It is settled law that "a general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient, because the verdict may have rested exclusively on the insufficient ground." *Zant v. Stephens,* 462 U.S. 862, 881, 103 S.Ct. 2733, 2745, 77 L.Ed.2d 235, 252 (1983); *Hitchcock v. Wainwright,* 745 F.2d 1332, 1340 (11th Cir.1984).

In reviewing challenges to sufficiency of the evidence on habeas corpus review, we must view the evidence in the light most favorable to the government and affirm the convictions if a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 322-23, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560, 576 (1979); *Hitchcock v. Wainwright,* 745 F.2d at 1340. Tafero contends that the evidence establishes that the trooper's car was taken after the shooting, and thus the shooting could not qualify as a felony murder because the murders were not committed in the course of the robbery. The felony murder rule "is circumscribed by the limitation that the lethal act must be in furtherance or prosecution of the common design or unlawful act the parties set out to accomplish." *Bryant v. State,* 412 So.2d 347, 350 (Fla.1982). The pivotal issue here is whether the intent to steal the police car, the underlying felony, was formed before or after the murders. We find that, after viewing the evidence in the light most favorable to the state, a rational trier of fact could have found beyond a reasonable doubt that the murders were committed in order to avoid imminent arrest, and that Tafero sought to kill the officers and take the trooper's car as a means of escape. We further find, after an independent review of the record, that the jury was properly instructed on this matter.

## III. Effective Assistance of Counsel—Sentencing

Tafero contends that improprieties by his counsel at the sentencing phase of his trial amounted to ineffective assistance of counsel as determined by the standard enunciated in *Strickland v. Washington.* Tafero argues that because his attorney failed to engage in pre-sentencing trial investigation, failed to present any evidence at the sentencing phase, and presented an ineffective closing argument, that Tafero was denied effective representation which was sufficient to undermine the result of the case. On state collateral appeal, the Supreme Court of Florida found: "Tafero's trial counsel testified at the evidentiary hearing and explained why he had or had not done the acts complained about. His testimony establishes that defense counsel's performance resulted from considered deliberation and performance and was based on tactical decisions." 459 So.2d at 1036.

The Supreme Court has articulated a two-prong test for determining whether a litigant has been denied effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show that counsel's performance fell below a threshold level of competence. Second, the defendant must show that counsel's errors due to deficient performance prejudiced his defense such that the reliability of the result is undermined. 466 U.S. at 687-88, 104 S.Ct. at 2064-65, 80 L.Ed.2d at 693.

Our analysis of this claim is shortened because we find that Tafero was not prejudiced in any way by counsel's performance. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2070, 80 L.Ed.2d at 699. Tafero contends that it was error for his counsel not to search for potential witnesses to produce at the sentencing phase, and not to question anyone other than Tafero's mother in

searching for potential mitigating evidence. This failure allegedly resulted in the inability of defense counsel to present any mitigating evidence at the sentencing phase of Tafero's trial.

■ A lawyer's election not to present mitigating evidence is a strategic decision which the court should avoid second guessing. Furthermore, a defendant's decision communicated to his counsel as to who he wants to leave out of the investigation, while not negating the duty to investigate, does limit the scope of the investigation. *Gray v. Lucas,* 677 F.2d 1086 (5th Cir. 1982), *cert. denied,* 461 U.S. 910, 103 S.Ct. 1886, 76 L.Ed.2d 815 (1983). *See also Mitchell v. Kemp,* 762 F.2d 886, 890 (11th Cir.1985) (citing *Gray* with approval). A lawyer, however, must first evaluate the potential avenues of investigation and then advise the client of their merit. *Foster v. Strickland,* 707 F.2d 1339, 1343 (11th Cir. 1983). A strategy of silence may be adopted only after a reasonable investigation for mitigating evidence or a reasonable decision that an investigation would be fruitless. *Strickland v. Washington,* 466 U.S. at 690–91, 104 S.Ct. at 2066, 80 L.Ed.2d at 695.

Tafero further maintains that his counsel's short closing argument in which counsel stated only that Tafero felt he did not receive a fair trial and would not beg for his life was ineffective because it amounted to a dare to the jury to impose the death sentence. This court has granted relief on a claim of ineffective assistance of counsel based in part on a closing argument which "did more harm than good." *King v. Strickland,* 714 F.2d 1481 (1983), *reinstated* 748 F.2d 1462 (11th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2020, 85 L.Ed.2d 301 (1985). *King v. Strickland,* however, is the only case in which we granted relief because counsel's closing argument met the *Strickland v. Washington* standard. *See Thompson v. Wainwright,* 787 F.2d 1447 (11th Cir.1986).

■ In this case, any inquiry into whether this closing argument amounted to ineffective assistance is rendered easy because

Tafero agreed to this strategy. The record reveals that Tafero was an active participant in his defense throughout the trial, and that his counsel conferred with him regularly concerning all matters. At the state habeas corpus evidentiary hearing, Tafero's counsel testified that the strategy of presenting the shortened closing argument was one which he and Tafero mutually agreed upon and one which counsel thought was the wisest choice under the circumstances.

■ At the state habeas corpus evidentiary hearing, Tafero presented the testimony of witnesses that could have been presented during the sentencing phase of the trial. This testimony, however, amounted to evidence merely as to Tafero's general good nature and character. Because Tafero presented weak mitigating evidence and because of the overwhelming evidence of the aggravating circumstances surrounding the murders, we are convinced that no reasonable probability existed that the jury would have reached a different result had Tafero's counsel presented the mitigating evidence which was available, or had he presented a stronger closing argument. Important to the granting of the writ of habeas corpus in *King v. Strickland* was the fact that the evidence surrounding the murder was merely circumstantial. *Thompson v. Wainwright,* 787 F.2d at 1455–56. In this case, the direct evidence of Tafero's involvement in the murder is overwhelming. We hold, therefore, that Tafero's claim of ineffective assistance of counsel at his sentencing hearing must fail under the prejudice prong of *Strickland v. Washington.*

IV. Effective Assistance of Counsel—
Other Stages of Trial

Tafero further contends that three other deficiencies in trial counsel's actions amounted to ineffective assistance of counsel.

■ Tafero contends that counsel's failure to object to the jury instructions given during the sentencing phase of the trial

was improper. Tafero argues that the instructions were deficient because they failed to instruct the jury that it could consider non-statutory mitigating circumstances in the balancing of factors and failed to instruct the jury that aggravating and mitigating circumstances had to be proved beyond a reasonable doubt. We find the jury instructions given in the penalty phase of Tafero's trial were constitutionally adequate, and his counsel thus was under no obligation to object. This court held in *Alvord v. Wainwright*, 725 F.2d 1282, 1299 (11th Cir.1984), that the exact jury instructions which were given in this case do not restrict consideration of mitigating circumstances. The court, contrary to Tafero's assertions, instructed the jury that it must find any aggravating circumstances beyond a reasonable doubt. Tafero's separate claim that the death penalty was unconstitutionally imposed because the jury was not properly instructed that it must find aggravating factors beyond a reasonable doubt is thus without merit.

██ Second, Tafero contends that counsel's failure to move for a change of venue because of the excessive trial publicity in Broward County amounted to insufficient representation. We find that trial counsel, on voir dire of the jury, adequately investigated the possibility of potential prejudice against Tafero, and his decision not to seek a change of venue was a strategic decision. *Williams v. Wainwright*, 681 F.2d 732 (11th Cir.1982); *United States v. Beasley*, 479 F.2d 1124 (5th Cir.), *cert. denied*, 414 U.S. 924, 94 S.Ct. 252, 38 L.Ed.2d 158 (1973).

Finally, Tafero incorporates into his appeal his testimony at the state court post-conviction hearing of other trial failings of his counsel. Without providing more specificity to his allegations of improper conduct, there is no basis for this court to further examine this argument. *United States v. Jackson*, 578 F.2d 1162 (5th Cir. 1978).

V. Non-Statutory Mitigating Circumstances

Tafero contends that because the Supreme Court of Florida found that Judge

Futch erroneously believed he could not consider non-statutory mitigating factors in Sonia Jacobs's case, that the judge must have held the same mistaken belief when he presided over Tafero's trial. *See Jacobs v. State*, 396 So.2d 713, 718 (Fla.1981). On collateral appeal, the Supreme Court of Florida found that this argument did not warrant Tafero's resentencing because he chose not to present mitigating evidence, and the "hypothetical failure to consider the testimony that Tafero now urges as being crucial does not create a substantial likelihood of actual and substantial prejudice." *Tafero v. State*, 459 So.2d 1034, 1036–37 (Fla.1984). Tafero claims that the trial judge could have considered one of the mitigating factors which was also considered in Jacobs's case: that he was the parent of two children for whom he cared. This was but one of several non-statutory mitigating circumstances which the Supreme Court of Florida found in Jacobs's case. We agree with the Supreme Court of Florida that the speculative failure of the trial court to consider Tafero's parental status does not create a substantial likelihood of actual and substantial disadvantage to Tafero. *See Ford v. Strickland*, 696 F.2d 804, 813 (11th Cir.), *cert. denied*, 464 U.S. 865, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983). Nothing in the record indicates that other mitigating factors were present but not considered.

██ The Supreme Court has recently articulated the standard by which non-statutory mitigating evidence erroneously not considered is to be analyzed in determining whether the exclusion is sufficiently prejudicial to constitute reversible error. *Skipper v. South Carolina*, —— U.S. ——, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986). *Skipper* is distinguishable, however, because Skipper sought to introduce at his sentencing hearing mitigating evidence which was improperly excluded, whereas Tafero did not attempt to present any mitigating evidence. Even if Tafero had proferred his parental status as mitigating evidence and *Skipper* was thus applicable, we cannot conclude that "it appears reasonably likely" that exclusion of this evidence "may

have affected" the sentencing decision. *Skipper,* — U.S. at ——, 106 S.Ct. at 1673.

### VI. Trial Judge's Failure to Recuse

██ Tafero's pro se motion on the day of the trial to disqualify the judge was denied on the grounds that it was untimely and legally insufficient. We need not address the state's claim that Tafero's failure to timely file his motion precludes federal habeas review, for we find that Tafero's claim has no merit. On direct appeal, the Supreme Court of Florida found Tafero's alleged grounds insufficient stating: "No personal bias or prejudice has been demonstrated in this case. The mere fact that Judge Futch was, in the distant past, a highway patrol officer does not support a claim of bias or prejudice on the judge's part. Tafero presented nothing to warrant the judge's disqualification." *Tafero v. State,* 403 So.2d 355, 361 (Fla.1981). We agree that no showing of personal bias exists, and the facts alleged were not such that a reasonable person would be convinced that a bias existed. *United States v. Archbold-Newball,* 554 F.2d 665, 682 (5th Cir.), *cert. denied,* 434 U.S. 1000, 98 S.Ct. 644, 54 L.Ed.2d 496 (1977). Although the trial judge's alleged attendance and emotional reaction at Black's funeral may have constituted adequate grounds for him to recuse himself, these facts did not mandate recusal or constitute a disqualification.

### VII. Co-Defendants' Life Sentences

██ Tafero contends that his death sentences were arbitrarily imposed when compared to the life sentences received by Jacobs and Rhodes. We agree with the finding of the Supreme Court of Florida that the evidence establishes that Tafero "did the shooting and probably was the leader of the group." *Tafero v. State,* 403 So.2d 355, 362 (Fla.1981). The Supreme Court of Florida reversed Jacobs's death sentences and remanded for resentencing on the grounds that the trial court improperly failed to accept the jury's recommendation of life imprisonment. *Jacobs v. State,* 396 So.2d 713, 718 (Fla.1981). In addition, the Supreme Court of Florida found two valid

aggravating factors and a mitigating factor. Tafero's situation is distinguishable in that not only did the jury recommend death, but the Supreme Court of Florida found four valid aggravating factors and no mitigating factors. Rhodes's case, in which he received two life sentences based upon his pleas to second-degree murder and kidnapping, is clearly distinguishable in that his role in the murders is one of lesser involvement and of lesser culpability. *Tafero v. State,* 403 So.2d at 362.

We have examined Tafero's claims that: (1) the trial court denied Tafero his right to self-representation; (2) Tafero was denied a fair trial by the inherently prejudicial atmosphere surrounding the proceedings; (3) the trial court erred in failing to determine whether Tafero knowingly and intelligently waived his right to present mitigating evidence or affirmatively participate in his sentencing; and (4) the denial of Tafero's request to take a polygraph examination denied him due process at the sentencing stage, and find them without merit.

Accordingly, the district court's denial of the petition for writ of habeas corpus is affirmed.

AFFIRMED.