UNITED STATES of America,
Plaintiff,

v.

Kenneth SUNDRUD, Defendant.

No. CR 05–775–DSF.

United States District Court,
C.D. California.

Nov. 1, 2005.

Stephen G. Wolfe, Assistant United States Attorney, Los Angeles, CA, for Plaintiff United States of America.

Dean R. Gist, Deputy Federal Public Defender, Los Angeles, CA, for Defendant Kenneth Sundrud.

## ORDER DENYING MOTION TO DISMISS INDICTMENT AND TO REGUSE ALL JUDGES OF THE CENTRAL DISTRICT

MOSKOWITZ, District Judge.

Defendant Kenneth Sundrud is charged in a one-count indictment with assaulting a federal officer resulting in the infliction of bodily injury in violation of 18 U.S.C. § 111(a)(1), .(b). He has filed a motion seeking dismissal of the indictment and the recusal of both the Office of the U.S. Attorney for the Central District of California and the judges of the U.S. District Court for the Central District of California. The Defendant bases the recusal motions on the appearance of bias, but does not allege any actual bias or prejudice on the part of the prosecutors or judges. On October 26, 2005, the Court held oral argument. For the reasons discussed below, Defendant's motion is **DENIED**.

## I. BACKGROUND

The charges against Sundrud stem from a July 29, 2005 incident at the Spring Street United States Courthouse in Los Angeles. On that day, Sundrud allegedly entered the courthouse, appearing agitated and intoxicated. He was observed to be speaking loudly to a male companion. Court Security Officers ("CSOs") approached Sundrud in the lobby and asked him to leave, Sundrud refused and the CSOs attempted to forcibly escort him out of the building. The Defendant resisted, physically and verbally, insisting that he had a right to stay. He fell to the ground twice as the CSOs forced him toward the exit. Just as he finally appeared ready to exit, he allegedly turned around and punched CSO Danny Rockwell in the nose. Officer Rockwell suffered several injuries, including a broken nose which required surgery. As a result of this alleged assault, Sundrud was arrested. *See* Opp'n at 1–2. *See also* Decl. of Dean R. Gist, Exs. A & B (providing official witness accounts).

Three Assistant U.S. Attorneys ("AUSAs"), as well as two judicial externs from the district court, witnessed the incident. The AUSA witnesses were Thorr as O'Brien, the Chief of the Criminal Division, Rodrigo Castro–Silva, and Stephanie

Yonekura–McCaffrey. At oral argument, the government represented that these attorneys have not been involved in the prosecution of Sundrud. One of the AUSAs is a member of the fraud unit, and thus had and will have no involvement in this case. The other two have been recused by the U.S. Attorney's Office. Although O'Brien, as Chief of the Criminal Division, would normally have a supervisory role in this prosecution, he did not have any part in the investigation and prosecutorial decision in this case. Indeed, consistent with O'Brien's recusal, the indictment itself was signed by Curtis Kin, Deputy Chief of the General Crimes Section. *See* Indictment *United States v. Sundrud,* CR. No. 05–775 (C.D. Cal. filed August 12, 2005).

The case was first assigned to the Honorable Edward Rafeedie of the Central District, who recused himself, pursuant to 28 U.S.C. § 455(a). Order to Reassign Criminal Case Due to Self–Recusal, CR No. 05–775 (C.D. Cal. filed Aug. 26, 2005). 28 U.S.C. § 455(a) requires "any justice, judge, or magistrate judge of the United States [to] disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The order explained that Judge Rafeedie was acquainted with the alleged victim.

The case was subsequently reassigned to the Honorable Dale S. Fischer of the Central District. Judge Fisher's courtroom is in the Roybal United States Courthouse, approximately two blocks from the Spring Street Courthouse. On September 19, 2005, Sundrud filed a motion seeking (1) dismissal of the indictment and recusal of the entire U.S. Attorney's Office for the Central District of California; and (2) recusal of all the judges of the Central District pursuant to 28 U.S.C § 455(a). On October 21, 2005, the Honorable Mary M. Schroeder, Chief Judge of the Ninth Circuit, designated the Honorable Barry Ted Moskowitz of the Southern District of Cali-

fornia to hear the motion, pursuant to 28 U.S.C. § 292(b).

## II. DISCUSSION

*Motion to Dismiss the Indictment*

■ An indictment "returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on its merits." *Costello v. US,* 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *United States v. Kenny,* 645 F.2d 1323, 1347 (9th Cir.1981), *cert. denied,* 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981). The Supreme Court has held that a district court has no authority to dismiss an indictment due to prosecutorial misconduct unless the misconduct resulted in actual prejudice to the defendant. *Bank of Nova Scotia v. United States,* 487 U.S. 250, 263, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988).

■ Here, there is absolutely no evidence or claim of government impropriety in obtaining or pursuing the indictment. The U.S. Attorney's Office took steps to ensure that the employees of that office who were witnesses took no part in the presentation to the grand jury of Sundrud's case. None of these witnesses appeared at the grand jury proceeding-Sundrud points to no actual impropriety or prejudice that has resulted from employees of the U.S. Attorney's Office having witnessed the alleged assault. Accordingly, the indictment is valid and calls for trial on the merits. Defendant's motion to dismiss the indictment is therefore denied.

*Motion to Recuse the U.S. Attorney's Office for the Central District of California*

At oral argument, Defendant withdrew this motion. The government stated that the three witness who are Assistant U.S.

Attorneys were disqualified from involve- ment in this case. Thus this motion is no longer before the court.

*Motion to Recuse all the Judges of the Central District of California*

■ The Defendant argues that all the judges of the Central District should be recused under 28 U.S.C. § 455(a). Although he does not allege any actual bias or prejudice, he argues that the appearance of impropriety requires this extraordinary result. 28 U.S.C. § 455(a) requires a judge to recuse in proceedings "in which his impartially might reasonably be questioned." The test for disqualification under Section 455(a) is an objective one which asks "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Hernandez,* 109 F.3d 1450, 1453 (9th Cir.1997) (quoting *United States v. Studley,* 783 F.2d 934, 939 (9th Cir.1986)).

■ Generally, judges are not required to recuse when they have a casual relationship with a victim, attorney, witness, or litigant appearing before the court. Courts have recognized that elevation to the bench does not and should not require withdrawal from society. *See, e.g. Sexson v. Servaas,* 830 F.Supp. 475, 482 (S.D.Ind. 1993) ("[t]aking the bench is a form of public service which does not operate to exclude all other forms of social and civic life"); *United States v. Kehlbeck,* 766 F.Supp. 707, 712 (S.D.Ind.1990) ("[i]t is a well-established principle that a judge is not required to forego a private life in order to sit as a federal judge"); *Pennsylvania v. Local Union 542, Int'l Union of Operating Engineers,* 388 F.Supp. 155, 157 (E.D.Pa.1974) ("[a] judge must have neighbors, friends, and acquaintances, business and social relations, and be a part of his day and generation"). In recognition of this principle, the United States Judicial Conference Advisory Committee on Codes

of Conduct has opined that there is no requirement that "judges must recuse from all cases handled by a law firm simply because judges have firm members for friends .... a friendly relationship is not sufficient reason in itself." 2 Guide to Judiciary Policies and Procedures, Ch. 4 at 21 (Advisory Opinion No. 11: Judge Acting in Controversy Where Friend of Long Standing or Friend's Law Firm is Counsel). Additionally, the Ninth Circuit has also permitted a judge to sit on a case despite a friendship with one of the parties. *Sewer Alert Comm. v. Pierce Cty.,* 791 F.2d 796, 798 (9th Cir.1986) Thus, it is not impermissible for judges to sit on cases despite possessing a level of personal familiarity with the parties involved. Recusal is required, however, where that level of personal relationship increases to the point that the judge can not be impartial or a reasonable person would question the judge's impartiality.

In *Tafero v. Wainwright,* 796 F.2d 1314 (11th Cir.1986), for example, the court considered the claim of a habeas petitioner who had been convicted of several crimes, including the first degree murder of a highway patrol officer. Petitioner argued that the trial judge should have recused himself because of his attendance and emotional reaction at the victim's funeral. *Id.* at 1322. The court agreed with the Florida Supreme Court's reasoning that "the mere fact that the [presiding judge] was, in the distant past, a highway patrol officer" did not warrant disqualification. *Id.* (quoting *Tafero v. State,* 403 So.2d 355, 361 (Fla.1981)). While the court allowed that these facts "may have constituted adequate grounds" for recusal, the court held that the facts did not require it. *Id.*

In *United States v. Harrelson,* 754 F.2d 1153 (5th Cir.1985), the appellants argued that the trial judge should have recused himself due to his relationship with the

murder victim. *Id.* at 1164–1166. The judge and the victim had served together as United States District Judges for the Western District of Texas. *Id.* at 1164–65. Despite the fact that the judge served as an honorary pallbearer at the victim's funeral, and had even eulogized him at several memorial ceremonies, the court found the district judge did not commit error in not self-recusing. *Id.* at 1165.

Nevertheless, there are certain instances where recusal, even of an entire district court bench, may be necessary. The main cases cited by the Defendant, *In re Nettles*, 394 F.3d 1001 (7th Cir.2005) and *Nichols v. Alley*, 71 F.3d 347 (10th Cir. 1995), provide two such examples. The common factual thread in *Nettles* and *Nichols* is clear: both involved plots—one tragically successful, the other foiled-to destroy federal buildings. In both cases, the respective circuit court granted motions for recusal of the entire judicial district, precisely the relief sought here. *Nettles*, 394 F.3d at 1002; *Nichols*, 71 F.3d at 350. In both cases, the Court of Appeals explained that ordering the recusal of an entire bench was necessary not because of judicial bias or prejudice, but due to appearances. *Nettles*, 394 F.3d at 1003 ("[w]e do not suggest that [the presiding judge] would in fact be prejudiced against Nettles .... [t]he issue is appearances"); *Nichols*, ("we commend [the presiding judge] for his integrity .... [t]here is certainly no allegation here of judicial impropriety").

These cases are easily distinguishable from the facts at hand. Nettles was charged with several federal crimes for attempting to destroy the Dirksen Courthouse in Chicago, the very building where the assigned judge presided. Nichols, on the other hand, succeeded in his alleged criminal aim, destroying the federal building in Oklahoma City, resulting in 169 deaths. *Nichols*, 71 F.3d at 349. Al-

though he was not accused of targeting or striking a courthouse, the attack took place just one block away. *Id.* As a result, the courthouse itself sustained damage and court personnel suffered injury. *Id.* at 349–50. Additionally, the court noted that some court personnel and employees had friends or relatives who were injured or killed in the blast. *Id.* at 350. Here, quite simply, there is no allegation of a large scale plot or conspiracy targeting judges or the federal courthouse. Nor is the Defendant accused of posing a threat to any judges. The facts in *Nettles* and *Nichols* demonstrated either a direct threat or actual injury to all the judges in the district

Additionally, the court in *Nichols* was careful to note the exceptional factual circumstances involved, thereby implicitly limiting the case's value as precedent. In *Nichols*, the court wrote that cases within " § 455 are extremely fact driven and must be judged on [their] unique facts and circumstances more than by comparison to situations considered in prior jurisprudence." *Id.* at 351 (internal quotations and citations omitted). Importantly, it also noted that "there is no case with similar facts to which we can lock to guidance in our application of the law to the facts in this case." *Id.* at 352.

■ Having outlined some parameters to the recusal issue, the Court considers the details of Sundrud's case. First, CSO duties are summarized as follows:

The primary duty of Court Security Officers (CSOs) is to provide a security presence at federal courthouses and judicial areas of multi-tenant federal buildings housing court operations. In performing these duties, CSOs staff fixed posts, conduct roving patrols, perform entry screening and screening of mail and packages, and control vehicle access to judicial parking facilities. CSOs may

also be used to provide a security presence during low-risk court proceedings so long as such usage does not detract from facility security.

The Judiciary Facility Security Program: Court Security Officers 1, http:// jnet.ao.dcn/ img/assets/4664/jsf prog.pdf (available through court internal website). It is therefore clear from this description that federal judges, in their regular course of business, can and do have casual contact with the CSOs in their courthouse. This contact, as conceded by the government at oral argument, can and likely does occur at entry points, in hallways, as well as in the courtrooms and chambers.

The Central District of California has three separate divisions, with judges sitting in four different courthouses: (1) in the Western Division, judges preside in the Roybal and Spring Street courthouses in Los Angeles; (2) in the Southern division, district judges sit in the Ronald Reagan Federal Building and Courthouse in Santa Ana; and (3) in the Eastern Division, two district judges sit in the George E. Brown, Jr. Courthouse in Riverside. While CSOs throughout the district are all employees of the same corporation (under a contract with the Administrative Office of the Courts), Decl. of Dean R. Gist at para. 3, they do not regularly rotate between the four courthouses. While CSOs in Los Angeles may, at different times, work in both the Roybal and Spring Street courthouses, under normal circumstances they would not be assigned for duty in either the Santa Ana or Riverside courthouses.

It is therefore possible that Judge Fischer, as well as the other district judges whose chambers are located in either of the two Los Angeles courthouses, would have regular, casual contact with CSOs who are witnesses in this case, including the alleged victim. Indeed, Judge Rafeedie cited this very "acquaintance" in

recusing himself from the case. Order to Reassign Criminal Case Due to Self–Recusal, CR No. 05–775 (C.D. Cal. filed Aug. 26, 2005). This relationship, however, is not enough for this Court to order recusal of any individual judge, let alone the entire Central District bench.

Two cases, *United States v. Faul*, 748 F.2d 1204 (8th Cir.1984), and *United States v. Ramsey*, 871 F.2d 1365 (8th Cir. 1989), neither of which were cited by the parties, are almost precisely on point. In *Faul*, the district court sentenced the defendants to life imprisonment for the murder of two United States Marshals. 748 F.2d at 1207. The defendants appealed the conviction, arguing that the district judge should have recused himself because of his "professional or personal relationship" with the deceased marshals. *Id.* at 1210. The court assumed that the marshals had contact with the court when providing security, but nevertheless held that "it does not follow that the judge had a 'professional or personal relationship' with either marshal sufficient to demonstrate personal prejudice bias, or an inability to be impartial." *Id.* at 1211. Accordingly, the court held that the district judge did not abuse his discretion in refusing to recuse himself. *Id.*

In *Ramsey*, the defendant was convicted on two counts of forcibly disrupting the performance of a government employee's official duties in violation of 41 C.F.R. § 101–20.305 (1987). 871 F.2d at 1366. The charges stemmed from the defendant's struggle with court security officers following a demonstration in front of the United States Courthouse in St. Louis. *Id.* The officers attempted to restrain the defendant, a protestor, from interfering with the officers' attempts to eject another protestor from the building. *Id.* The defendant fought back, kicking two officers during the struggle and digging his finger-

nails into one officer's hand so deeply that he drew blood. *Id.* Defendant appealed and argued that his motion to disqualify the magistrate judge who tried the case should have been granted because the security guards involved were stationed in the courthouse where the magistrate judge sat. *Id.* at 1367. The court, citing *Faul,* held that the magistrate judge did not have to recuse himself. *Id.*

These cases are similar to the matter at hand. In both instances, the victim, like the alleged victim here, provided security for the courthouses where the judge who presided over the case sat. These judges also imposed sentences, including one for life imprisonment. Despite the respective judge's familiarity with the victims, recusal was not required. Any meaningful distinction that can be made between these cases and the matter here does not support Sundrud's motion for recusal. If *Faul,* whose facts involved a wild and wanton shootout culminating in the murder of two U.S. marshals, does not require recusal, the assault here, which resulted in stitches and a broken nose, cannot require recusal. Moreover, these types of assaults on court security officers are not, unfortunately, a rare occurrence. Yet judges who sit in courthouses under the aegis of protection provided by the victims of such attacks regularly try the accused. *See, e.g., United States v. Lynch,* 58 F.3d 389 (8th Cir. 1995) (defendant tried on 18 U.S.C. § 111(a)(1) charges in the same courthouse as the alleged attack); *Smith v. State,* 189 Ga.App. 27, 375 S.E.2d 69 (1989) (defendant tried for attempted murder of sheriff who provided court security); *State v. Wiegmann,* 350 Md. 585, 714 A.2d 841 (1998) (defendant tried for striking court deputy). The cases cited above demonstrate that a casual relationship with a victim officer who provides court security does not require recusal. The Court finds the reasoning provided by the Court in the *Smith* case right on point:

It is undisputed that there was a regular working relationship between the sheriff and the court personnel including the superior court judges. But the existence of a working relationship in and of itself does not demonstrate or presume personal bias or prejudice .... [t]he nature of the judicial office is such that judges routinely and often daily interact with members of the local sheriff's department and other courthouse personnel involved in operating and providing support services to the court system. A judge is not prohibited from presiding over a criminal case in which the alleged victim is one with whom he has worked ....

*Smith,* 375 S.E.2d at 74.

Finally, as discussed at oral argument, the court acknowledges that the judge who presides over this case may be involved in making credibility determinations about the victim and other court security personnel who may be called to testify. The judge may well have had casual contact with these potential witnesses. However, district judges regularly make credibility determinations about people they may know from in and around the courthouse. Marshals, Probation Officers, and Pretrial Services Officers, for example, regularly testify before the court in hearings. Judges do not normally recuse in these instances. The Court does not see any meaningful distinction between this type of testimony and that which may be offered by CSOs in Sundrud's case. The possibility that the officers will testify in Sundrud's trial does not, therefore, require recusal. Simply put, a reasonable person with knowledge of all the facts would not reasonably question the impartiality of any judge who sat in the same courthouse or district as the CSOs involved in this case.

In conclusion, it is clear that defendant has no colorable claim for recusal of the

 

entire federal bench in the Central District. Furthermore, the judges in Riverside and Santa Ana likely have no relationship, real or imagined, with the witnesses in this case. Trying the case in one of these courthouses would therefore be the equivalent of trying the case in another judicial district. These courthouses are more than an hour's driving time from the Spring Street courthouse. Clearly, recusal of the judges in those divisions is not even a close call. As discussed in oral argument, because prospective jurors may well pass through the lobby of the Spring Street courthouse (the location of the alleged attack) and potentially be screened upon entry by CSOs who may testify, trying the case in Santa Ana or Riverside may alleviate concerns of prejudice to the defendant. However, this is left to the discretion of the judge who presides over this case.

Additionally, the Court notes that Judge Rafeedle self-recused because of his acquaintance with the alleged victim. The decision whether any individual judge should recuse him or herself because of more than casual personal contact with CSO Rockwell or any of the witness CSOs or the judicial externs[1] is not for this Court to decide, but is left to the discretion of the assigned judge to evaluate under Section 455(a). Obviously, if an individual judge feels that (1) he or she can not be completely impartial or (2) it may appear he or she can not be impartial due to a specific relationship with the alleged victim or witnesses, he or she is obligated to recuse under 28 U.S.C. § 455(a). Because casual contact with Court Security Officers is not by itself the type of contact or relationship that per se requires a judge to recuse, the motion to recuse all the judges of the Central District is **DENIED**.

## III. CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss the indictment and recuse all the judges of the Central District is DENIED. Defendant has withdrawn his motion to recuse the U.S. Attorney's Office.

**IT IS SO ORDERED.**

---

**1.** If one of the externs of the presiding judge is called as a witness, recusal would be appropriate under Section 455(a).