787 So.2d 51 (2001)
Jorge Luis GINIEBRA, Appellant,
v.
STATE of Florida, Appellee.
No. 2D99-731.
District Court of Appeal of Florida, Second District.
February 23, 2001.
James Marion Moorman, Public Defender, and Terri L. Backhus, Special Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and John M. Klawikofsky, Assistant Attorney General, Tampa, for Appellee.
PATTERSON, Chief Judge.
Jorge Giniebra appeals from his judgment and sentences for second-degree murder and kidnapping. He challenges the sufficiency of the evidence and the propriety of the jury instructions. We find no merit to Giniebra's jury instruction challenges, but we agree that the evidence fails to support a conviction for murder and reverse as to that charge.
The record shows that Giniebra and James Wooding worked together at a sugar mill. John Lee Williams, a drug dealer, *52 contacted Wooding about buying a kilo of cocaine from Giniebra and his associates. Williams gave Wooding a stack of money, representing it to be $9,000, his share of the purchase price; however, the stack partially consisted of magazine pages cut in the shape of dollar bills. Wooding did not count the money before using it in the drug transaction. On January 11, 1997, Williams accompanied Wooding to the place were the transaction was to occur, but remained in the car while the transaction took place in a white van.
Later that day, James Chaumers, a co-worker at the sugar mill, saw Giniebra and Wooding in the parking lot after work. In a joking manner, he remarked that Giniebra had a bulge in his shirt and asked if Giniebra had a gun. Wooding got in the driver's side of his car and unlocked the door for Giniebra on the passenger side. It did not appear to Chaumers that Giniebra was forcing Wooding into the car. Wooding drove in the opposite direction of his house, followed by a "Hispanic-looking" man driving a white van.
Beginning around 7:30 p.m. that evening, Gladys Kent, Wooding's girlfriend, received a series of ten phone calls from Wooding. Wooding told her that he needed her to deliver $18,000 to Donnelly's Restaurant in Clewiston or he would be killed. The kidnapper told Ms. Kent that she was to drop the cash in the back of a truck parked by a trash can. Ms. Kent could hear shots being fired in the background. After receiving the first phone call, Ms. Kent called the police. A deputy sheriff recorded subsequent calls with a small hand-held tape recorder. On the tape recording, Wooding stated that if the person in the truck did not come back with the money, his kidnappers were going to shoot him. When Ms. Kent asked how he was abducted, Wooding responded that "they" got him at work and made him drive his car to his present location. Ms. Kent advised the kidnappers that she needed more time to come up with the money. Wooding then said, "It's up to you, Jorge." During one of the last phone calls, Wooding said they were "gettin' ready to kill me" because Williams "messed up the deal."
Through Giniebra's father, law enforcement officers were able to track down the white van's owner, Angel Amador. Officers went to Amador's trailer and stopped a brown Lincoln that Armando Martinez was driving out of the yard. An officer recognized Martinez and later identified Martinez's voice on the first ransom tape. The officers found Amador's home in complete disarray. Floor tiles had been removed from the floor, which had been washed with diesel fuel. There was a reddish stain by the door. Blood found on some furniture and paper towels was identified as Wooding's. Giniebra's fingerprints were found on beer bottles removed from the kitchen counter. A hat recovered from outside the trailer was identified as the one Wooding was wearing when he left work with Giniebra.
On January 14, 1997, Martinez led authorities to Wooding's decapitated body, which was recovered from a shallow grave in an orange grove. Giniebra was arrested shortly thereafter on charges of first-degree murder and kidnapping. However, on February 19, 1997, the State filed a "no file" in the case based on the belief that the evidence was insufficient to support a conviction. Several months later, FBI Agent John King showed a photo line-up to John Lee Williams consisting of six "similar-looking" white or Hispanic males. Williams chose Giniebra as the man he saw on the day of the drug deal. Thereafter, King arrested Giniebra and read him Miranda[1] rights. Giniebra made the statement, *53 "I was there but I didn't shoot anybody." Giniebra was again charged with the first-degree murder and kidnapping of Wooding.
On July 3, 1997, the State filed an amended information charging Giniebra as a principal with second-degree murder with a firearm, pursuant to sections 782.04(2) and 777.011, Florida Statutes (1995), and kidnapping, pursuant to sections 787.01 and 777.011, Florida Statutes (1995). Defense counsel filed a motion to suppress the statement to Agent King. The trial court denied the motion, and the statement was admitted at trial.
In its motions for judgment of acquittal, the defense argued that the State had not proven a prima facie case against Giniebra. The court denied the motions, and the defense rested its case without calling any witnesses. The jury found Giniebra guilty of both counts. The trial court sentenced Giniebra to 472.7 months, or approximately forty years, on each count to run concurrently.
To convict as a principal, the State must show that Giniebra intended the crime to be committed and assisted the actual perpetrator in committing the crime. See Staten v. State, 519 So.2d 622 (Fla.1988). The record contains no evidence that Giniebra intended or participated in Wooding's murder. In the light most favorable to the State, the record shows, at most, that Giniebra was at Amador's trailer. Mere presence at the scene or knowledge that an offense is being committed is insufficient to convict. See McLean v. State, 754 So.2d 176 (Fla. 2d DCA 2000). Because the evidence is insufficient to support the murder conviction, we reverse as to that charge.
However, Giniebra's conviction for kidnapping must stand. In the ransom tape, Wooding stated that when he left work, he was forced to drive his own car to his present location. Giniebra was seen leaving work with Wooding in Wooding's car, which was followed by a white van. These facts, in combination with the evidence that Giniebra was at the trailer and Giniebra's statement that "I was there but I didn't shoot anybody," establishes Giniebra's participation in the kidnapping. Accordingly, we affirm the kidnapping conviction and remand for resentencing.
Affirmed in part; reversed in part and remanded.
WHATLEY and STRINGER, JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).