990 So.2d 1098 (2007)
John Lee BARRON, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D03-2689.
District Court of Appeal of Florida, Third District.
August 22, 2007.
Rehearing and Rehearing En Banc Denied October 8, 2008.
*1099 Karen M. Gottlieb, Special Assistant Public Defender, for appellant.
Bill McCollum, Attorney General, and Jill K. Traina, Assistant Attorney General, for appellee.
Before SHEPHERD and ROTHENBERG, JJ., and LEVY, Senior Judge.
ROTHENBERG, Judge.
The defendant, John Lee Barron, appeals his convictions for second degree felony murder, attempted armed robbery, and attempted second degree murder. We affirm.
*1100 According to the State's case, in September 2000, Ed Cody was at home with his teenage son, Derrick, when a woman rang the buzzer to the gate surrounding Cody's home. When Cody responded, the woman explained that she had car trouble and needed assistance. Cody went outside to help the woman. While looking under the hood of the woman's car, a second car entered the gate and pulled up next to Cody. The driver of this second car exited the car and placed a gun to Cody's head. Immediately thereafter, three more men, armed with firearms, exited the car, and Cody realized that the woman was a decoy. Although the four men wore caps or masks, Cody testified that he saw their faces before they covered them. While the driver held Cody at gunpoint, the other three gunmen, one of whom Cody identified as the defendant, approached Cody's home, and Cody yelled to his sixteen-year-old son, Derrick, to call 911. Derrick retrieved a gun from his father's bedroom and began to dial 911. When the men entered the house, Derrick became frightened that he would be heard and, therefore, did not complete the call. While hiding in the bathroom, he watched as the men rifled through drawers and beneath his father's mattress. Derrick exited the bathroom and began firing at the men.
Meanwhile, outside of the Cody home, the driver of the second vehicle tried to restrain Cody with handcuffs. When Cody heard shots being fired from inside his home, he believed the gunmen were shooting at his son, Derrick, and he tried to break away to get to his son. As he started towards the house, the woman yelled for the driver to shoot Cody because he had seen her face. The driver shot Cody twice in the back as he was attempting to get to his son. Cody took a few more steps and then collapsed. As he lay bleeding on the ground, he saw the three gunmen who entered his home, exit. The first was uninjured, the second was shot in the chest, and the third man, who Cody identified as the defendant, was shot in the neck. Cody testified that he saw the defendant, who stumbled out of the house with a mask pulled up over his face and a gun in his hand, fall to the ground, clutching his neck. He also testified that the defendant was the first one to go through the gate and to enter his home. The driver and the two other gunmen fled in their vehicle leaving the wounded defendant behind, and the woman fled in her vehicle. The defendant, who collapsed in front of Cody's home, was found wearing a bandana which had fallen away from his face. Next to him was a pair of gloves, and a gun was found lying under his body. The other wounded gunman who fled with the other robbers died from his wounds.
At trial, the defendant claimed that he had not been involved in any of the crimes committed at the Cody home. He testified that he accompanied the woman to the Cody home because she told him that she wanted to settle a business problem with Cody. While he waited in the car, another car arrived, containing a driver and three passengers, who he did not know. The driver exited the car and approached Cody and the woman. The defendant claimed that he watched from the woman's car as Cody, the woman, and the driver engaged in a heated conversation. The defendant contends that he exited the car and was urging the woman to leave, when one of the passengers of the other car approached him and pulled him towards the Cody house at gunpoint. The defendant testified that he was shot while resisting the gunman, who was attempting to force him into the house. He denied having any involvement with the attempted robbery or the shootings that occurred.
Ed Cody is a paraplegic as a result of this shooting. The gunman who died had *1101 a gunshot wound to the neck and abdomen. The bullets were found to have been fired from the firearm used by Derrick.

THE 911 CALLS
The first issue we address is whether the trial court erred by permitting the State to introduce a 911 tape containing two anonymous calls. As we conclude that the two calls qualify as spontaneous statements pursuant to section 90.803(1), Florida Statutes (2003), and/or excited utterances pursuant to section 90.803(2), Florida Statutes (2003), we find that they were properly admitted.
The two calls were made following the shooting of Ed Cody in the back, and the shots fired by Derrick. The first call was made one minute before Derrick's 911 call, and the second call was placed simultaneously with that of Derrick's. The anonymous calls were placed close to the violent events, thereby precluding an opportunity to contrive or misrepresent. Therefore, we find that the trial court properly admitted the two anonymous calls as either spontaneous statements or excited utterances.
As the calls were made to obtain assistance rather than in response to police questioning, we additionally conclude that they were nontestimonial in nature and, therefore, do not violate the Sixth Amendment or the holding in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). See Towbridge v. State, 898 So.2d 1205, 1206 (Fla. 3d DCA 2005)(holding Crawford inapplicable to nontestimonial spontaneous statements); Herrera-Vega v. State, 888 So.2d 66, 69 (Fla. 5th DCA 2004)("Whatever the United States Supreme Court eventually decides `testimonial' evidence consists of, it does not appear to include the spontaneous statements made by [the victim] to her mother while being dressed . . . ."), review denied, 902 So.2d 790 (Fla.2005); Lopez v. State, 888 So.2d 693, 699 (Fla. 1st DCA 2004)("Many courts have concluded that a hearsay statement made in a 911 call is not testimonial, because the statement is not made in response to police questioning, and because the purpose of the call is to obtain assistance, not to make a record against someone."). We additionally agree with the Fifth District that the United States Supreme Court in Crawford did not foreclose the ability of individual states to develop hearsay laws that exempt nontestimonial statements from confrontation clause scrutiny. Herrera-Vega, 888 So.2d at 69. As Florida law clearly provides for the admission of nontestimonial hearsay, which the two complained-of calls qualify as, we find no error in their admission.

THE DEA INVESTIGATION FILES
During the pendency of this case, the defendant attempted to obtain the production of the Drug Enforcement Administration ("DEA") investigative files of Ed Cody. Instead of subpoenaing the DEA, the defense filed a motion with the trial court requesting that it compel the State to produce them. We find that the trial court properly denied the motion as the files the defendant sought were not in the State's possession or control.
Rule 3.220(b)(1), Florida Rules of Criminal Procedure, requires the State to provide to the defense all information and material within its possession and control. The Florida Supreme Court has specifically interpreted the rule to include records in the State's constructive possession, including data it has the ability of obtaining "by virtue of the State being a party to any compact or agreement with the Federal Bureau of Investigation. . . ." State v. Coney, 294 So.2d 82, 84 (Fla.1973). As the State did not have the files sought in its actual or constructive possession (no showing was made that the State has a compact *1102 or agreement with the DEA), it was not required to produce the materials the defense sought. See State v. Miranda, 777 So.2d 1173, 1174 (Fla. 3d DCA 2001)(holding that the trial court cannot compel the State to produce DEA records not in its custody or control).

THE ATTEMPTED MURDER OF ED CODY
The defendant was charged with the second degree felony murder of a co-perpetrator, Reginal Harris (Count I); attempted strongarm robbery (Count II); attempted armed robbery (Count III); use or display of a firearm during the commission of a felony (Count IV); and the attempted first degree murder with a deadly weapon of Ed Cody (Count V). He was found guilty as charged in Counts I through IV, and guilty of the lesser-included offense of attempted second degree murder for the shooting of Ed Cody in Count V.[1]
The defendant claims that the evidence, when viewed in the light most favorable to the State, Pollen v. State, 834 So.2d 380, 383 (Fla. 3d DCA 2003), is insufficient to hold him criminally liable as a principal for the attempted second degree murder of Ed Cody. We disagree.
The State's witnesses testified that when Ed Cody was shot, the defendant was either inside of the Cody home or lying wounded in the front yard. When Cody heard gunshots, he was being held at gunpoint outside of his home by the driver of the vehicle, who was attempting to restrain Cody by putting handcuffs on him, and the other three gunmen, including the defendant, were in his home. Upon hearing the gunshots, Ed Cody started running towards the house because he believed the gunmen were shooting at his son, Derrick. As he ran towards his house, the woman yelled for the driver to kill Cody because he had seen her face. The driver replied, "I will put him in a wheelchair," and fired twice, shooting Ed Cody in the back. Cody fell to the ground. When he looked up, he saw the shooter and the woman jump into the cars they arrived in and two of the robbers, running from the house. One of the robbers was carrying a gun and the other robber was holding his chest. He then observed the defendant, who was wearing a mask and carrying a gun, stumble out of the house and collapse.
The defendant argues that because there is no evidence that the defendant intended that Ed Cody be murdered, and there was no evidence that he aided or abetted in the attempted murder of Ed Cody, he cannot be held criminally responsible for the crime as a principal.
In support of his argument, the defendant and the dissent rely upon three cases decided by the Second District Court of Appeal, Giniebra v. State, 787 So.2d 51 (Fla. 2d DCA 2001), Hedgeman v. State, 661 So.2d 87 (Fla. 2d DCA 1995), and Collins v. State, 438 So.2d 1036 (Fla. 2d DCA 1983). None of these cases, however, addresses the issue presented in this case, and, therefore, do not apply. In the instant case, the State argued that the attempted murder of Ed Cody was committed in furtherance and during the commission of the attempted armed robbery of Ed Cody. No such argument was made in Giniebra, nor did the Second District analyze the case under this theory of law. In Hedgeman, there was no underlying felony, and in Collins, the defendant's convictions were reversed because no one could identify the defendant or his car as being involved in the crimes committed.
*1103 Giniebra was convicted of kidnapping and second degree murder. The Second District Court of Appeal reversed the murder conviction, finding that there was no evidence presented that Giniebra intended or participated in the victim's murder, and that the evidence, viewed in the light most favorable to the State, was that Giniebra was merely present at the scene. The District Court did not address, nor does it appear that it was even argued, that the murder was committed in furtherance of the kidnapping. In fact, the State's theory of the case was that the victim was murdered by drug suppliers after the victim, acting as a middleman between the suppliers and another man named Williams, consummated the deal with fake money given to him by Williams. There was no evidence presented that Giniebra was involved in the drug transaction. The murder was committed as a consequence of the drug transaction, to which Giniebra was neither charged with nor implicated in. Giniebra, therefore, is inapplicable as Barron was charged with and convicted of committing the underlying felony of attempted armed robbery and the attempted murder was committed during the commission and in furtherance of the attempted armed robbery.
Hedgeman is equally unavailing, as Hedgeman was only charged with second degree murder. There was no other felony involved. The murder was clearly not committed during the commission or in furtherance of an underlying felony. This is an important and critical distinction because, since the murder was not committed during the commission of a separate felony that the defendant intended to commit and/or assisted others to commit, the State was required to prove that the defendant intended to commit the murder and did something in furtherance of and/or to assist others to commit the murder. Hedgeman is inapplicable because in the instant case, Barron was charged with and convicted of committing the underlying felony of attempted armed robbery, and the attempted murder of Ed Cody was committed during the commission and in furtherance of the attempted armed robbery, a distinction ignored by the defendant and the dissent.
The third case relied upon by the defendant and the dissent is Collins. Collins held that:
[T]o be guilty of a crime physically committed by another, [the defendant] must not only have the conscious intent that the criminal act be committed, but he must also do some act to assist the other person to actually commit the crime. Mere knowledge that an offense is being committed is not the same as participation with criminal intent, and mere presence at the scene, including driving the perpetrator to and from the scene or a display of questionable behavior after the fact, is not sufficient to establish participation.
Collins, 438 So.2d at 1038 (citations omitted).
In Collins, the defendant was charged with burglary and theft of a Winn-Dixie store. The State claimed that while Collins was not the person who broke into the store or took items from inside the store, he aided and abetted the co-defendant by transporting the co-defendant to the store and serving as a "look-out." The co-defendant was arrested on the scene with the stolen property. Based upon a description of a car seen in the area, Collins was stopped and subsequently identified by an eyewitness to the crime. The problem was that the eyewitness recanted his identification at trial and testified that, because the lights in the parking lot were dim, he could not say for sure whether he had seen Collins or his vehicle outside the store that *1104 night. The Second District Court of Appeal, therefore, reversed the convictions because Collins was not identified at trial as the driver of the vehicle and there was insufficient evidence to exclude Collins' reasonable hypothesis of innocence (Collins claimed he was out that night to buy milk). Collins, therefore, is not relevant to the analysis of whether the defendant in our case can be held responsible for the attempted second degree murder of Ed Cody, which was committed during the commission and in furtherance of the attempted armed robbery of Ed Cody.
In contrast to these cases decided by the Second District Court and relied upon by the defendant and the dissent, Giniebra, where no evidence was presented nor argument made that the murder was committed in the course or in furtherance of the kidnapping; Hedgeman, where there was no underlying felony; and Collins, where the issue was the insufficiency of the evidence to link the defendant to the crimes committed, are the cases decided by the Florida Supreme Court and this court that specifically address the issue we are faced with, whether co-felons may be held criminally responsible for the acts of co-perpetrators committed during the course or in furtherance of their initial criminal purpose.
Felons are generally held responsible for the acts of their co-felons. Adams v. State, 341 So.2d 765 (Fla.1976). "As perpetrators of an underlying felony, co-felons are principals in any homicide committed to further or prosecute the initial common criminal design." Lovette v. State, 636 So.2d 1304, 1306 (Fla.1994). "`One who participates with another in a common criminal scheme is guilty of all crimes committed in furtherance of that scheme regardless of whether he or she physically participates in that crime.'" Id. at 1306 (emphasis added)(quoting Jacobs v. State, 396 So.2d 713, 716 (Fla.1981)). On the other hand, "an act in which a defendant does not participate and which is `outside of and foreign to, the common design' of the original felonious collaboration may not be used to implicate the non-participant in the act." Parker v. State, 458 So.2d 750, 752 (Fla.1984)(quoting Bryant v. State, 412 So.2d 347, 349 (Fla.1982)).
Thus, our examination in this case focuses on whether the attempted murder of Ed Cody was committed in furtherance of the initial common design or purpose, or whether the shooting constituted an independent act outside of and foreign to the original criminal scheme. The issue is not whether the defendant participated or was even present when the attempted murder of Ed Cody took place nor, as the dissent claims, that the defendant must have planned to kill Ed Cody with his cohorts or aided them in some manner to commit the deed. The issue is, instead, as the jury found the defendant guilty of the common scheme or design to commit an armed robbery, whether the shooting of Ed Cody was in furtherance of that crime or an independent act to which there was no causal connection.
In Parker, the Florida Supreme Court upheld Parker's conviction for the murder of the victim, which was committed by the co-defendant, even though Parker claimed that the killing was an independent act for which he should not be held criminally responsible. The Florida Supreme Court found that since Parker was a principal of the underlying criminal purpose (the kidnapping of the victim when he failed to pay a drug debt), he was a principal in the homicide which was committed during the course of the criminal enterprise. The Court concluded that "[t]he murder was a natural and foreseeable culmination of the motivations for the original kidnapping" *1105 and "[a]s a principal to the kidnapping, Parker [was] a perpetrator of the underlying felony and thus a principal in the homicide." Id. at 753 (citing Goodwin v. State, 405 So.2d 170 (Fla.1981)).
In Lovette v. State, 636 So.2d 1304 (Fla. 1994), the defendant and Thomas Wyatt escaped from prison. During their crime spree, they committed an armed robbery of a Domino's pizza store. Wyatt shot and killed the manager, the manager's wife, and a delivery man. The defendant claimed that he believed Wyatt was going to lock the three victims in a closet so that they could make their getaway, but instead, while Wyatt was with them in a back room of the store, he killed them. The Florida Supreme Court concluded that while "Lovette did not fire the shots that killed the victims, he was a willing participant in the armed robbery of the store," and because there was a causal connection between the robbery and the homicides, the evidence did not support an independent-acts theory of defense and the defendant was properly convicted as a principal to these murders. Id. at 1307.
Likewise, in Ray v. State, 755 So.2d 604 (Fla.2000), the Florida Supreme Court upheld the defendant's convictions for first degree murder, robbery, and grand theft, even though the murder was committed by a co-defendant. The defendant, Terry Paul Ray, and the co-defendant planned and committed an armed robbery of a liquor store. After robbing the store, they left the scene but were forced to pull off of the road when the pickup truck they were traveling in developed mechanical problems. Deputy Lindsey stopped to investigate and was subsequently killed by the co-defendant. While the Court recognized that a defendant may escape punishment for acts committed by a co-felon "`which fall outside of, and are foreign to, the common design of the original collaboration,'" Ray, 755 So.2d at 609 (quoting Dell v. State, 661 So.2d 1305, 1306 (Fla. 3d DCA 1995)(quoting Ward v. State, 568 So.2d 452 (Fla. 3d DCA 1990))), it concluded that since "both Ray and [the co-defendant] were participants in the robbery and the murder resulted from forces they set in motion," Ray was equally responsible for the murder. Ray, 755 So.2d at 609 (emphasis added). Because the killing of Deputy Lindsey occurred while Ray and the co-defendant were fleeing from the robbery, the Florida Supreme Court found that the criminal episode had not ceased. "As we have previously held, the term `during the course of a robbery' encompasses the period of time when the felons are in flight from the scene of the crime." Id. (citing Griffin v. State, 639 So.2d 966 (Fla.1994)).
In the instant case, the jury found the defendant guilty of attempted armed robbery. The evidence established that the defendant, the other three gunmen, and the woman who was used to lure Ed Cody outside, were all participants in the common scheme to rob Ed Cody. While one of the gunmen held Ed Cody at gunpoint outside, the defendant and the other gunmen went into the Cody home and began rifling through Cody's belongings in an effort to carry out their scheme. Ed Cody's son, Derrick, who was hiding in the bathroom, began shooting at them, causing the defendant, who had been shot, and the other two gunmen who had accompanied him inside the house to commit the robbery, to flee. Meanwhile, the fourth gunman, who was guarding Ed Cody and attempting to place handcuffs on his hands, shot Ed Cody in the back after he broke away and attempted to reach his son in the house. Thus, the evidence clearly establishes that the shooting occurred during the course of the robbery. "A killing in the face of either verbal or physical resistance *1106 by a victim is properly viewed as being within the original criminal design." Jones v. State, 804 So.2d 551, 552 (Fla. 3d DCA 2002)(emphasis added); see also Lovette, 636 So.2d at 1306-07. As the attempted murder of Ed Cody occurred while he was attempting to resist during the commission of the attempted robbery, we conclude, as we did in Jones, that the shooting fell within the original criminal design and thus, the shooting did not constitute an independent criminal act.
Additionally, we conclude that the attempted murder of Ed Cody was committed in furtherance of the attempted robbery, as it occurred while the defendant and his co-conspirators and partners-in-crime were attempting to flee the attempted robbery and/or was committed after the female co-perpetrator ordered one of the gunmen to shoot Cody because he had seen her face. See Perez v. State, 711 So.2d 1215, 1217 (Fla. 3d DCA 1998)(holding that as the defendant was a willing participant in the armed robbery, the murder of an innocent bystander, who was killed during a shoot-out with the store owner as the perpetrators were attempting to flee the scene of the robbery, was committed in furtherance of the robbery, and a causal connection existed between the robbery and the homicide of the bystander since it enabled the perpetrators to flee the scene). The shooting of Ed Cody allowed the co-perpetrators to flee the scene without meeting further resistance from Cody, who, as a result of being shot, was paralyzed and unable to resist. While the defendant was unable to flee with his companions due to his injuries, we conclude that his incapacitating injuries were fortuitous and will not shield him from criminal responsibility for acts committed in furtherance of his criminal purpose. See Hall v. State, 403 So.2d 1321 (Fla.1981)(decedent's unexpected use of a gun in the robbery was not an intervening act as a matter of law); Dell, 661 So.2d at 1306-07 (holding that the murder of a clerk during an armed robbery of a 7-Eleven store by a co-perpetrator after the defendant had exited the store, was in furtherance of the robbery, not an independent act, as the shooting was an effort to eliminate an eyewitness to the robbery); Diaz v. State, 600 So.2d 529, 530 (Fla. 3d DCA 1992)("Diaz was [ ] clearly liable for any acts, whether he knew of them ahead of time or not, committed by an accomplice in the furtherance of that offense."); Gonzalez v. State, 503 So.2d 425, 427 (Fla. 3d DCA 1987)("[The defendant], by intending to aid the perpetrator in the robbery, is guilty of crimes committed in furtherance of the scheme."). As the attempted murder of Ed Cody occurred "during the course of the attempted robbery;" was in response to his resistance; made it easier for the co-perpetrators to effectuate their escape; and was done to eliminate an eyewitness to the common criminal purpose and design of the perpetrators, we conclude that the evidence was sufficient to hold him criminally liable as a principal for the attempted second degree murder of Ed Cody.
We further note that the defendant's defense at trial was not that he had withdrawn from the criminal activity of his co-perpetrators and that the shooting of Ed Cody was an independent act for which he should not be held responsible. He claimed, rather, that he had not been involved in any of the criminal activities at the Cody home. It is clear that the jury rejected that defense which conflicted with both the testimonial and physical evidence presented.
The dissent incorrectly posits that it is the majority's position that because the attempted murder of Ed Cody was committed during the course and in furtherance of the attempt to rob Ed Cody, that the defendant is guilty of attempted second *1107 degree felony murder. The dissent, however, misunderstands both the majority's findings and the law regarding second degree felony murder and attempted second degree felony murder. That is not the majority's position, nor do the facts or the law support such a finding. The defendant was properly convicted of attempted second degree murder, not attempted second degree felony murder.
In order to be guilty of the crime of either the attempt or the completed act of second degree felony murder, the person who kills or attempts to kill the victim must be someone who was not involved in the underlying felony. See § 782.04(3), Fla. Stat. (2003). That was the situation regarding the death of the co-perpetrator, who was shot and killed by Ed Cody's son, who was not a co-perpetrator in the attempted armed robbery. The defendant was guilty as a principal of the second degree felony murder of his partner-in-crime by Ed Cody's son. That conviction is not in dispute by either the defendant or the dissent.
The defendant was properly convicted of the attempted second degree murder of Ed Cody, which is governed by section 782.04(2), not section 782.04(3), Florida Statutes (2003), which contains very different elements than second degree felony murder. By the jury's verdict, it is clear that the jury concluded that the attempted murder of Ed Cody was not planned in advance. It was not premeditated. Thus, the attempted murder was an attempted second degree murder, and because the defendant was a co-perpetrator in the commission of the attempted armed robbery, and the attempted killing of Ed Cody was during the commission and in furtherance of the attempted armed robbery, not outside of or foreign to their criminal purpose, the defendant was also guilty as a principal to that attempted murder.
It is also not the majority's position that because the shooting of Ed Cody occurred during the attempted robbery, that the defendant was guilty of attempted second degree murder as a matter of law. The issue is clearly one which must be resolved by the jury. There must be a causal connection between the two, Lovette, 636 So.2d at 1304; the attempted murder cannot be foreign to the common scheme of the original collaboration, Dell, 661 So.2d at 1306; and the attempted murder must have resulted from forces the defendant and his co-perpetrators set in motion, Ray, 755 So.2d at 609. The jury answered these questions adverse to the defendant and the evidence clearly supports the jury findings.
We additionally take issue with the following statement made by the dissent:
There is no evidence defendant intended the shooting or that defendant undertook any act to assist the shooter to commit the attempted murder. This crime could just as easily have been developed and executed at a separate time or place. Mere coincidence of time and placethe only connections of this crime to the robberyis insufficient to convict defendant of second-degree murder as a co-principal of the crime committed by the shooter and woman decoy under the theory of liability advanced by the State in this case.
The evidence was undisputed that Ed Cody, the victim of the robbery, was shot during the robbery after Ed Cody resisted their attempts to restrain him after he heard shots fired in the house where his son was located and when Cody attempted to reach him. The shooting was not a "mere coincidence of time and place." It was directly related to the attempted robbery and as a consequence of the attempted robbery, because the defendant and the man who shot Ed Cody "were participants *1108 in the [attempted] robbery and the [attempted] murder resulted from forces they set in motion." Ray, 755 So.2d at 609. A co-perpetrator of the attempted robbery, which the defendant helped plan and commit, shot Ed Cody. Cody was the actual target of their common scheme and/or plan to commit armed robbery, and he was shot during the course of the attempted robbery. He was not some stranger unrelated to the common scheme or plan to rob Ed Cody. Ed Cody was shot because he had seen their faces and had tried to escape in an effort to reach his son, who he believed had been shot by the robbers during their attempt to commit the robbery. Thus, the defendant was equally responsible for the shooting.
The dissent also suggests that because Ray, Lovette, Parker, Hall, Jones, Dell, and Perez are all first degree murder cases, they do not apply to the instant case because the defendant was convicted of attempted second degree murder. We must respectfully disagree. The following are examples where these same principles were applied to convictions of second degree murder. In Williams v. State, 261 So.2d 855 (Fla. 3d DCA 1972), this court affirmed the defendant's conviction for second degree murder where the co-perpetrator shot and killed the victim during the commission of a robbery that both the defendant and co-perpetrator had planned to commit. Likewise, in Staten v. State, 519 So.2d 622 (Fla.1988), the Florida Supreme Court affirmed Staten's convictions for second degree murder, armed robbery, and aggravated battery,[2] finding sufficient evidence to sustain Staten's convictions as a principal. The court found that Staten, who helped plan the robbery of a drug dealer, was properly convicted as a principal to the second degree murder of the drug dealer who was shot and killed during the robbery, and the aggravated battery of a bystander who was also shot during the robbery, even though Staten, who served as the get away driver, remained in the car. See also Hampton v. State, 336 So.2d 378 (Fla. 1st DCA 1976)(affirming defendant's convictions for assault with intent to commit robbery (attempted robbery) and for an assault with intent to commit murder in the second degree (attempted second degree murder)).
Therefore, it is clear that the principal theory of prosecution may be applied regardless of whether the shooting was premeditated or not and regardless of whether the victim lives or dies. "One who participates with another in a common criminal scheme is guilty of all crimes committed in furtherance of that scheme," Lovette, 636 So.2d at 1306 (quoting Jacobs v. State, 396 So.2d 713, 716 (Fla.1981)), unless the acts committed by a co-perpetrator "fall outside of, and are foreign to, the common design of the original collaboration." Ray, 755 So.2d at 609 (quoting Dell v. State, 661 So.2d 1305, 1306 (Fla. 3d DCA 1995)(quoting Ward v. State, 568 So.2d 452 (Fla. 3d DCA 1990))).
As the remaining issues raised are without merit, we need not specifically address them.
Affirmed.
LEVY, Senior Judge, concurs.
SHEPHERD, J., concurring in part and dissenting in part.
I concur in the opinion of the majority affirming the introduction of the 911 calls *1109 into evidence in this case, as well as the denial of the defendant's motion to compel the State to provide the DEA investigation files. I respectfully disagree with the majority's decision to affirm defendant's conviction of attempted second-degree murder.
As the majority correctly states, the State charged defendant with attempted first-degree murder with a deadly weapon for the crime committed on Ed Cody. See § 782.04(1)(first degree murder); § 775.087, Fla. Stat. (2000)(possession of a deadly weapon in the commission of a felony). But because everyone admitted defendant was not the shooter, the State necessarily had to do more to secure a conviction against defendant. G.C. v. State, 407 So.2d 639, 640 (Fla. 3d DCA 1981)("Presence at the scene, without more, is not sufficient to establish either intent to participate or act of participation."). The theory the State selected to hold defendant responsible for the criminal act of the actual shooter was "principal liability" under section 777.011 of the Florida Statutes (2000). Under statutory principal liability in Florida, a principal can include not only the actual actor responsible for the crime, but also, in some cases, a non-participant to the actual act. The statute reads as follows in full:
777.011 Principal in first degree. Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he or she is or is not actually or constructively present at the commission of such offense.
§ 777.011, Fla. Stat. (2006)(emphasis added); Staten v. State, 519 So.2d 622, 624 (Fla.1988)("Under our law, both the actor and those who aid and abet in the commission of a crime are principals in the first degree.").
Principal liability has long been interpreted by our supreme court to consist of two elements: (1) the defendant "must intend that the crime be committed;" and (2) the defendant "[must] do some act to assist the other person in actually committing the crime." Staten, 519 So.2d at 624 (citing Ryals v. State, 112 Fla. 4, 150 So. 132 (1933)). It also is settled that the "criminal offense" referenced in section 777.011 is the criminal offense for which the defendant is sought to be convictedin this case, the attempted murder of Ed Codyrather than any underlying offense that may be associated with or have precipitated the charged offense. See, e.g., Watkins v. State, 826 So.2d 471, 475 (Fla. 1st DCA 2002)(evidence that the defendant uttered [a counterfeit] check insufficient to convict defendant "as a principal to [underlying, separate and distinct crime of] forgery"); Mickenberg v. State, 640 So.2d 1210, 1211 (Fla. 2d DCA 1994)(evidence that a person aided and abetted another in the commission of an offense, although sufficient to convict the person as a principal to that offense is insufficient to convict the person of a conspiracy to commit the subject offense).
In this case, the jury found defendant guilty of three crimes: attempted armed robbery, second-degree felony murder for the shooting death of a co-perpetrator, and attempted second-degree murder of Ed Cody. The verdicts on the first two of these crimes are sustainable because they either were indisputably part of the common plan (the robbery) or, legally speaking, a reasonably foreseeable consequence of carrying out the plan (the second-degree *1110 felony murder for the shooting death of the co-perpetrator). See United States v. Carter, 445 F.2d 669, 673 (D.C.Cir.1971)(finding the defendant guilty of first-degree felony murder by co-felon of victim cab driver during the course of a robbery); see also State v. Smith, 748 So.2d 1139, 1143 (La.1999)(shooting of robbery victim deemed one of the "foreseeable consequences of carrying out the plan" making co-felons guilty of felony murder). On the other hand, as clearly demonstrated by the trial testimony, the shooting of Cody was part of a different plan conceived by the woman decoy with its own purposeto prevent Cody from later being able to identify her. In Cody's own words:
[A]s soon as the other guys run into the front door, I said, oh, my God. They are in the house.
And I heard four gun shots. . . . And the first thing I did was, oh, my God. They killed my son. And I said, man, you killed my son. My son is in there. I said, I got to go. Just leave. Just leave. I got to go.
And I broke to run towards the house. My first concern, my only concern, was for Derrick.
So as I started to run from the house, the girl screamed to the guy, kill him, kill that son-of-a-bitch. He saw my face.
And he said, and I will never forget these words. He said, ["]I will put him in a wheelchair.["] That was the only words he spoke. (Emphasis added.)
Q: Who said that, the driver?
A: The driver.
Then he fired twice. I didn't hear the gunshots, but could smell the gunpowder.
Applying section 777.011 to this crime, the attempted murderer was the shooter; the woman who exhorted the shooter to shoot was a principal. Defendant is not liable under either theory. At the time the plan to shoot Cody was developed and executed, defendant was either in the house or on the ground holding his bleeding neck. There is no evidence defendant intended the shooting or that defendant undertook any act to assist the shooter to commit the attempted murder. This crime could just as easily have been developed and executed at a separate time or place. Mere coincidence of time and placethe only connections of this crime to the robberyis insufficient to convict defendant of second-degree murder as a co-principal of the crime committed by the shooter and woman decoy under the theory of liability advanced by the State in this case. Three recent Second District Court of Appeal decisions compel this result: Giniebra v. State, 787 So.2d 51 (Fla. 2d DCA 2001); Hedgeman v. State, 661 So.2d 87 (Fla. 2d DCA 1995); and Collins v. State, 438 So.2d 1036 (Fla. 2d DCA 1983).
In Giniebra, the Second District reversed a jury decision that Giniebra should suffer principal liability for second-degree murder of Wooding, a co-worker, who, while serving as the intermediary between the buyer of cocaine and Giniebra as the seller, delivered less than the purchase price of the product to Giniebra. Giniebra, 787 So.2d at 52. Giniebra kidnapped Wooding and delivered him to some of his confederates. Id. One of them killed Wooding. Id. The only testimony connecting Giniebra to the shooting was Giniebra's statement to an FBI agent after his arrest, "I was there but didn't shoot anybody." Id. at 53. Reversing the conviction for second-degree murder, the Second District Court of Appeal stated:
To convict as a principal, the State must show that Giniebra intended the crime *1111 to be committed and assisted the actual perpetrator in committing the crime. The record contains no evidence that Giniebra intended or participated in Wooding's murder. In the light most favorable to the State, the record shows, at most, that Giniebra was at [the same location as Wooding]. Mere presence at the scene or knowledge that an offense is being committed is insufficient to convict.
Id. (internal citations omitted). Just as the evidence was insufficient for a jury to conclude that Giniebra, while present at the scene, intended that Wooding be murdered or participated in the deed, similarly, here, there is insufficient evidence for a jury to conclude defendant, while also present at the scene, intended that Cody be shot, or that he aided, abetted, or participated in the shooting.
Hedgeman also is instructive. Like defendant in our case, Hedgeman appealed a second-degree murder conviction, arguing that his motion for judgment of acquittal should have been granted because of insufficient evidence. Hedgeman, 661 So.2d at 88. Like defendant, Hedgeman was indicted for murder in the first degree. Id. The State prosecuted Hedgeman for both first-degree premeditated murder and felony murder. Id. The trial testimony showed that the victim owed Hedgeman ten dollars. Id. There were prior altercations over the debt in which Hedgeman stated he was going to get the victim. Id. On the night the victim was killed, Hedgeman accompanied Daniel White and two other males to a neighbor's apartment where the victim was visiting. Id. White entered the apartment and shot the victim three times. Id. Hedgeman either was behind White or entered the apartment immediately after the shooting. Id. Hedgeman walked over to and kicked the victim. Id. The Second District stated:
In light of the lack of evidence to establish that Hedgman knew of White's intent to kill the victim and that he took action to aid him in the act, there was not sufficient evidence to convict Hedgeman of second-degree murder on the principal theory.
Id. at 88-89. Of note, the court stated, "Hedgeman could not have been convicted of second-degree felony murder because the killing was committed by a principal." Id. at 88. Similarly, here, there is no evidence defendant knew of the driver's intent to shoot Cody or that defendant intended the shooting be committed. There is no evidence defendant took any action before or during the shooting to aid, encourage, or participate in the driver's act of shooting the victim.
Finally, in Collins, a security guard for a neighboring business observed a vehicle drive to the front of a store at 1:40 a.m. and drop off an individual named Alvin Scott, who had a crowbar in hand. Collins, 438 So.2d at 1037. The vehicle returned sometime later, approximately thirty seconds before the police arrived, but left without Scott. Scott was arrested for burglary, and Collins, who allegedly had dropped Scott at the store, was stopped and arrested nearby. Id. The State sought to inflict principal liability on Collins for the burglary. Id. At the close of the State's case-in-chief, Collins moved for judgment of acquittal in part based upon the ground that no evidence had been presented to indicate Collins' involvement beyond his alleged presence at the scene. Id. The trial court denied the motion, but the Second District reversed, stating:
[W]e agree with defense counsel's argument that there was no evidence of any relationship between appellant and Scott to indicate that appellant knew Scott, was aware of Scott's activities, or did something, other than merely being *1112 present in the vicinity, by which appellant intended to help commit the burglary. . . . [F]or one to be guilty of a crime physically committed by another, he must not only have the conscious intent that the criminal act be committed, but he must also do some act to assist the other person to actually commit the crime. Mere knowledge that an offense is being committed is not the same as participation with criminal intent, and mere presence at the scene, including driving the perpetrator to and from the scene or a display of questionable behavior after the fact, is not sufficient to establish participation.
Id. at 1037-38 (internal citations omitted). The Second District further stated:
As there was nothing truly to connect appellant with the crime or to exclude his reasonable hypothesis of innocence, we hold that appellant's alleged behavior on the night Scott attempted to burglarize the [store] provides insufficient evidence to sustain appellant's convictions and those convictions are, therefore, reversed.
Id. at 1038 (emphasis added). Here, defendant's hypothesis of innocence is that he neither intended that Cody be shot for the benefit of the woman decoy nor took any action to further the shooting. The State offered no evidence to refute this hypothesis.[3]
As I read the majority opinion, the majority is of the view that because the attempted murder of Cody occurred during the course of the robbery, the decision by the shooter to seek to silence Cody at the request of the woman decoy must be imputed to the defendant as a matter of law. Although the majority bridles at the thought, its affirmance of the attempted second-degree murder conviction of defendant for the shooting of Cody is, in actuality, a disguised affirmance on the basis of a crime not chargedattempted second degree felony murder. The fact that the majority reasons almost exclusively from a potpourri of authorities treating persons convicted of felony murder, see Jones v. State, 804 So.2d 551, 552 (Fla. 3d DCA 2002)(affirming conviction for first-degree felony murder); Ray v. State, 755 So.2d 604, 608 (Fla.2000)(affirming a conviction for first-degree felony murder); Perez v. State, 711 So.2d 1215, 1217 (Fla. 3d DCA 1998)(affirming a conviction for first-degree felony murder); Dell v. State, 661 So.2d 1305, 1305 (Fla. 3d DCA 1995)(affirming a conviction for first degree felony murder); Griffin v. State, 639 So.2d 966, 971 (Fla.1994)(affirming a conviction for first-degree felony murder and attempted first degree murder); Lovette v. State, 636 So.2d 1304, 1307 (Fla.1994)(affirming three convictions for first-degree felony murder); Diaz v. State, 600 So.2d 529, 529 (Fla. 3d DCA 1992)(affirming a conviction for second-degree felony murder); Gonzalez v. State, 503 So.2d 425, 426 (Fla. 3d DCA 1987)(affirming a conviction for first-degree *1113 felony murder); Parker v. State, 458 So.2d 750, 753 (Fla.1984)(affirming a conviction for first-degree felony murder); Bryant v. State, 412 So.2d 347, 350 (Fla.1982)(affirming a conviction for first-degree felony murder); Goodwin v. State, 405 So.2d 170, 172 (Fla.1981)(affirming a conviction for first-degree felony murder); Adams v. State, 341 So.2d 765, 767 (Fla.1976)(affirming a conviction for first-degree felony murder), confirms this view.[4]
However, the majority's use of a second-degree felony murder theory and supporting case law is irrelevant to the issue presently under discussion because the crime of second-degree felony murder is a separate statutory crime not charged here. See § 782.051(1). United States v. Lacher, 134 U.S. 624, 628, 10 S.Ct. 625, 33 L.Ed. 1080 (1890)("before a man can be punished, his case must be plainly and unmistakably within the statute [charged]"). More significantly, under section 782.051(1), an attempted felony-murder conviction requires proof not only that the defendant participated in the underlying crime, but also that the defendant "commit[ted] *1114 (or aids and abets) an intentional act that is not an essential element of the [underlying] felony." Id. (emphasis added); Battle v. State, 911 So.2d 85, 87 (Fla. 2005); King v. State, 800 So.2d 734, 739 (Fla. 5th DCA 2001). In this case, the evidence is undisputed that defendant did not and likely was not even in a position to aid, abet, or assist in the crime against Cody. It is not surprising the State elected not to pursue an imputation based theory in the trial court. The majority errs in affirming on this theory in this case.
I would reverse the conviction for attempted second-degree murder.
NOTES
[1] Counts II and IV were ultimately vacated by the trial court.
[2] Staten's convictions of accessory after the fact were, however, reversed because the Court concluded that Staten's convictions as a principal precluded additional convictions as an accessory after the fact to the same crimes.
[3] Although not supported by record evidence, the majority does offer passim alternate hypotheses of its own for the shooting of Cody, including that the shooting "was in response to [Cody's] resistance" and "made it easier for the co-perpetrators to effectuate their escape." See supra majority at 1106. However, these inferencesnone argued by the Stateare legally insufficient to sustain defendant's attempted second-degree murder conviction. See Collins, 438 So.2d at 1038 ("Where two or more inferences in regard to the existence of criminal intent and criminal acts must be drawn from the evidence and then pyramided to prove the offense charged, the evidence lacks the conclusive nature to support the conviction."). The legally offending inferences that would need to be drawn by the majority are: (1) defendant knew at the outset that the unidentified shooter planned to shoot, or had been instructed to shoot Ed Cody for the benefit of the decoy woman; and (2) defendant intended to actively assist in the intended shooting.
[4] Admittedly, the majority does sprinkle into this sea of irrelevant authority a scattering of principal liability cases which it suggests call for affirmance of defendant's attempted second-degree murder conviction. However, a casual examination of these cases confirms instead that reversal is required. For example, in Staten v. State, 519 So.2d 622, 624 (Fla.1988), supra majority at 1107-08, the Florida Supreme Court affirmed the conviction of Susan Staten as a principal in the first degree within the meaning of section 777.011 of the Florida Statutes for the commission of the crime of robbery where, contrary to the facts supporting the charged crime in the instant case, "there was direct testimony that [she] was present on numerous occasions when the crime was planned, [t]here was further discussion as the group, including [Staten] drove to the scene, [she] waited across the street while the robbery and murder took place, and then drove the getaway car." Likewise, in Hall v. State, 403 So.2d 1321 (Fla.1981), supra majority at p. 1106, the court affirmed the conviction of Hall as a principal where Hall drove the victim to a secluded area and "[t]he evidence show[ed] that either Hall or [co-defendant] killed [the victim]" and also "demonstrate[d] that the other was an aider and abettor." Similarly, in Hampton v. State, 336 So.2d 378 (Fla. 1st DCA 1976), supra majority at 1108, the First District Court of Appeal affirmed the robbery conviction of Hampton conviction under the predecessor statute, section 776.011, Fla. Stat. (1973), for "aiding and abetting" the crime of robbery where it was undisputed that he accompanied two others to the robbery site, positioned himself as a lookout outside the store, and shot into the store near the victim as the perpetrators left the scene. Further, in Jacobs v. State, 396 So.2d 713, 716 (Fla. 1981), supra majority at 1104, the court affirmed a principal theory for kidnapping where the defendant, in furtherance of the kidnapping, participated in a murder and coerced the victim into a car. Finally, in Williams v. State, 261 So.2d 855 (Fla. 3d DCA 1972), supra majority at 1108, this court affirmed the conviction of Williams for "aiding and abetting" the killing of a store clerk, which occurred while Williams physically restrained the victim as agreed while his confederate emptied the victim's pockets and shot him.

In contrast, there was no plan or intent to shoot Cody for the benefit of the woman decoy prior to the decision of the shooter to do so at her behest and for her benefit during the course of the robbery. The fact that the jury found defendant guilty of second-degree murder rather than first-degree murder as charged confirms this fact. See § 782.04(2), Fla. Stat. (2000)("The unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, is murder in the second degree . . . .")(emphasis added). Nor, of course, did defendant "do [any] act to assist [the shooter]," as required for conviction of the crime charged. See supra majority at 1109. Finally, and perhaps most illuminating, the convictions in each of these principal liability cases was, in stark contrast to the rationale of the affirming majority in the instant case, properly based upon "the criminal offense for which the defendant [was] sought to be convicted." Id.