DAMOORGIAN, J.
Defendant, Prentice Stanley, appeals his judgment and sentence for first degree murder and leaving the scene of an accident resulting in death. Stanley was convicted of both counts and sentenced to life in prison. Stanley raises four issues for our review. Finding no merit to Defendant’s arguments, we affirm his judgment and sentence.
By way of background, the victim, Mah-moud Mansour, was the general manager of a clothing manufacturer in Ft. Lauder-dale, Florida. While at work, Mansour observed a 2004 Nissan Titan being driven by someone later identified as Stanley enter the company parking lot and drive up to a metal container that held boxes of clothing. Mansour became suspicious and attempted to close the parking lot gate. The truck’s driver drove the truck through the gate, running over Mansour who later died of his injuries.
Stanley was arrested for the crime and charged by indictment with first degree murder and leaving the scene of an accident resulting in death. Testimony at trial revealed that the truck used in the crime had recently been reported stolen. It was found abandoned near the scene of the crime. Stanley’s fingerprints were found in multiple places on the truck. Additionally, a friend of Stanley’s testified that Stanley had confessed to him that he was the perpetrator. This friend contacted the *947 police and alerted them to Stanley’s whereabouts.
On appeal, Stanley argues that the trial court erred by: 1) instructing the jury that Stanley could be convicted on either of two theories of first degree murder; to wit: premeditated murder and felony murder despite the fact that the indictment charged only felony murder; 2) introducing 911 tapes which allegedly contained hearsay statements; and 3) admitting seventeen autopsy photographs into evidence. Stanley also argues that his conviction violates the double jeopardy clause.
Stanley first argues that the Grand Jury’s indictment charged him under a felony murder theory while the jury’s instructions allowed for a conviction under a premeditated murder theory. The True Bill returned by the Grand Jury stated that Stanley “[Ujnlawfully and feloniously while ... engaged in the commission of, attempting to commit or escaping from the immediate scene of a Burglary and/or a Robbery, did kill and murder the said Mahmoud Mansour against the form of the statute in such case pursuant to [sjections 782.04(1).”
Section 782.04, Florida Statutes (2007), titled “Murder,” addresses “[t]he unlawful killing of a human being” and covers both killings “perpetrated from a premeditated design” and those “committed by a person engaged in the perpetration” of certain felonies. §§ 782.04(l)(a)l. and 782.04(l)(a)2.
Stanley contends that the Grand Jury indicted him solely for first degree felony murder. However, when the court provided the jury with its instructions, it indicated that when a defendant is charged with first degree murder, he could be convicted on either a theory of premeditation or a theory of felony murder. The court then described the elements of both premeditated murder and felony murder. At closing argument, the State repeated the claim that Stanley could be convicted of first degree murder on a premeditation theory. The jury found that “[t]he Defendant is [gjuilty of Murder in the First Degree, as charged in the indictment.”
Stanley did not object at the time of the alleged errors. If a jury instruction is not objected to at the time of the alleged error, the error must be fundamental to be raised on appeal. State v. Delva, 575 So.2d 643, 645 (Fla.1991).
According to Stanley, the trial court’s jury instructions and the prosecutor’s closing statement constructively amended the indictment. See United States v. Barrios-Perez, 317 F.3d 777, 779 (8th Cir.2003). A constructive amendment of a charging document “ ‘allow[s] the jury to convict the defendant of an offense different from or in addition to the offenses alleged in the indictment.’ ” Id. at 779 (quoting United States v. Emery, 186 F.3d 921, 927 (8th Cir.1999)). This is a due process violation which constitutes fundamental error. Crain v. State, 894 So.2d 59, 69 (Fla.2004).
The law does not support Stanley’s claim that the indictment was constructively amended. In O’Callaghan v. State, 429 So.2d 691, 695 (Fla.1983), our Supreme Court held that “ ‘the state does not have to charge felony murder in the indictment but may prosecute the charge of first-degree murder under a theory of felony murder when the indictment charges premeditated murder.’” Id. at 695 (quoting State v. Pinder, 375 So.2d 836, 839 (Fla.1979)). Finding no prejudice, the court concluded that a criminal defendant, “because of our reciprocal discovery rules, [has] full knowledge of both the charges and the evidence that the state would submit at trial.” Id. at 695; see also Kearse v. State, 662 So.2d 677, 682 (Fla.1995) *948 (“The State need not charge felony murder in an indictment in order to prosecute a defendant under alternative theories of premeditated and felony murder when the indictment charges premeditated murder.”)-
We hold that if a conviction under a felony murder- theory is legal where the indictment charged premeditated murder, as was the case in O’Callaghan, then a conviction under a premeditated murder theory is legal where the indictment charged felony murder, as is the case here. See also Deparvine v. State, 995 So.2d 351 (Fla.2008).
Stanley next argues that the trial court erred by permitting the introduction of recordings of 911 calls. At trial, the State moved to enter into evidence several 911 calls made by witnesses to the crime. Some of these witnesses did not testify at trial. Defense counsel objected on hearsay grounds to the introduction of “any 911 calls that are not from a person who has testified in this case.” The State argued that while the recordings were hearsay, they were nonetheless admissible as either excited utterances or present sense impressions.
“[Wjhether evidence falls within the statutory definition of hearsay is a matter of law, subject to de novo review.” Burkey v. State, 922 So.2d 1033, 1035 (Fla. 4th DCA 2006). The excited utterance exception to the hearsay rule applies if the statement in question is “[a] statement or excited utterance relating to a startling event or condition made while the declar-ant was under the stress of excitement caused by the event or condition.” § 90.803(2), Fla. Stat. (2007).
In Barron v. State, 990 So.2d 1098 (Fla. 3d DCA 2007), the defendant was alleged to have participated in an armed home invasion, in which one of the witnesses was shot. Immediately after the shooting, several anonymous 911 calls were made to obtain assistance. Id. at 1101. In concluding that the trial court did not err by permitting the introduction of the 911 tapes, the district court noted that “[t]he anonymous calls were placed close to the violent events, thereby precluding an opportunity to contrive or misrepresent.” Id. In this case, the 911 calls were made immediately after the crime, were not in response to the police investigation, and were made to request assistance.[1] Accordingly, the 911 tapes qualify as excited utterances pursuant to section 90.803(2) and were properly admitted.
Stanley’s third point on appeal is that the trial court erred by admitting into evidence seventeen autopsy photos of the victim. Stanley argues that the photographs were not relevant as it was undisputed that the victim died as a result of being struck by the vehicle.
At trial, the State called the assistant medical examiner to the stand in order to question him' about the victim’s injuries. While the medical examiner was on the stand, the State attempted to introduce seventeen autopsy photographs into evidence. The photographs displayed the various externally visible injuries sustained by the victim, and pictures of his blood stained clothes. Stanley objected, arguing that the pictures “ha[d] no value except to inflame the jury.” The State countered that the photographs were needed in order *949 to establish, through the medical examiner, that the defendant intentionally ran over the victim causing injury and death. The trial court overruled the objection, explaining that “[ijndividually, they represent different injuries, that came about as a result of this situation. They are cleaned up. They are not the type that would normally incite some type of disgust or sympathy, these are simply what the ME is doing.” The photographs were then hsed by the medical examiner to explain the victim’s injuries and cause of death, which was crushed force chest injury. The medical examiner also reviewed all of the victim’s injuries, relying on the autopsy photographs as visual aids.
A trial court’s decision to admit photographic evidence will not be disturbed absent an abuse of discretion. Brooks v. State, 787 So.2d 765, 781 (Fla.2001). In order to be admissible, photographic evidence must be relevant to a material fact in dispute. Boyd v. State, 910 So.2d 167, 191 (Fla.2005). However, photographs will not be admissible if they are so shocking in nature as to defeat the value of their relevance. Hertz v. State, 803 So.2d 629, 641 (Fla.2001). Autopsy photographs may be admissible when they are necessary to explain a medical examiner’s testimony, the victim’s injuries, the manner of death, or the location of the wounds. Id. at. 642. The photographs were relevant to establishing that Stanley intentionally ran over the victim. Moreover, the photographs were not unnecessarily disturbing considering the subject matter.
Finally, Stanley argues that his conviction violates double jeopardy. U.S. Const, amend. V. He contends that because he was convicted of both leaving the scene of the accident resulting in death and first degree murder of the same victim, his constitutional rights have been violated. Determining whether double jeopardy is violated based upon undisputed facts is a legal determination subject to a de novo standard of review. Labovick v. State, 958 So.2d 1065, 1068 (Fla. 4th DCA 2007).
The double jeopardy clause of the United States Constitution is violated where a defendant receives multiple punishments for a single offense. North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In determining whether a defendant has been exposed to double jeopardy as a result of multiple convictions, courts employ the Blockburger[2] test, as codified in Section 775.021, Florida Statutes (2007). Under this test, if the legislature does not clearly state whether a defendant may be convicted of both of two statutorily defined crimes, a defendant’s double jeopardy rights will have been violated if he is convicted of two offenses and (1) the offenses require identical elements of proof; (2) the offenses are degrees of the same offense; or (3) one of the offenses is a lesser included offense of the other offense. § 775.021(4)(b), Fla. Stat. Under the Blockburger test, Florida courts have determined that “ ‘only one homicide conviction and sentence may be imposed for a single death.’ ” Rodriguez v. State, 875 So.2d 642, 645 (Fla. 2d DCA 2004) (quoting Houser v. State, 474 So.2d 1193, 1196 (Fla.1985)).
Lawrence v. State, 801 So.2d 293 (Fla. 2d DCA 2001) is on point. There, the court reasoned that the one homicide conviction per death rule did not apply when the crimes charged were leaving the scene of an accident involving death and DUI manslaughter. The court in Lam-ence held that “[the defendant] was not pun *950 ished under two separate homicide statutes for a single death. Instead, in this case [the defendant] was convicted of a homicide charge and a subsequent traffic felony.” Id. at 294. The crime of leaving the scene of an accident resulting in death is intended to punish behavior that takes place after the actions which resulted in the death of the victim. Id. at 295. The State correctly argues that the charge of leaving the scene of an accident resulting in death does not require proof that the defendant caused the death. Adopting the reasoning in Lawrence to this case, we conclude that Stanley’s convictions on both counts do not constitute double jeopardy.

Affirmed.

MAY and LEVINE, JJ., concur.

. The Barron court also stated that because “the calls were made to obtain assistance rather tiran in response to police questioning, we additionally conclude that they were non-testimonial in nature and, therefore, do not violate the Sixth Amendment.” Barron, 990 So.2d at 1101. See also Ware v. State, 596 So.2d 1200, 1201 (Fla. 3d DCA 1992); Stiney v. State, 699 So.2d 662, 669 (Fla.1997). We reach the same holding in this case.

. Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).